A95A1007. RATLIFF v. CSX TRANSPORTATION, INC.
(464 SE2d 1)

BEASLEY, Chief Judge.

Ratliff was working for CSX as a railroad switchman in Ashland, Kentucky, when he injured his back throwing a manual switch that moved rails from one connection to another. He contended the switch jammed or stuck because the switch site was poorly drained, ultimately deteriorating the structural support under the railroad bed and causing it to depress, which altered the arrangement and operation of the switch. He also contended CSX's inspections were inadequate to detect this condition because tests done on the switch were not performed with a railcar nearby, which further depressed the rails, so the tests did not reflect the conditions encountered by those responsible for operating the switch.

He sued CSX under the Federal Employers' Liability Act, 45 USC § 51 et seq., asserting both negligence and strict liability. The strict liability theory was premised on a violation of 49 CFR § 213.103, which requires track to be supported by material sufficient to restrain it vertically and to provide adequate drainage. Ratliff appeals the judgment entered for CSX on a jury verdict.

1. In his first three enumerations of error, he contends the court wrongly refused to admit evidence showing modifications had been made to the switch site after the accident. He urges its admissibility because it is evidence: a) in a strict liability case, b) it explains conduct of an expert witness, or c) it impeaches a defense witness. The general rule is that such evidence is not permitted in a negligence case, *Gunter v. Jackson Electric Membership Corp.*, 198 Ga. App. 629, 631 (1) (402 SE2d 309) (1991), for it presumably would tend to show "that the defendant recognizes and admits his negligence. [Cit.]" *Brooks v. Cellin Mfg. Co.*, 251 Ga. 395, 397 (306 SE2d 657) (1983).

(a) Ratliff contends that *General Motors Corp. v. Moseley*, 213 Ga. App. 875 (447 SE2d 302) (1994), allows it in cases such as his. *Moseley*, which involved product liability, accepted the admissibility of remedied modification evidence because such a rule would not affect a manufacturer's decisions to create a better product; it would be subject to strict liability regardless of whether the product was improved. Id. at 881-883 (4).

Ratliff relies upon *Moseley*'s statement: "we find persuasive and hereby adopt the rationale discussed above for admitting evidence of subsequent remedial measures in strict liability cases." Id. at 882 (4). We cannot reach the question whether the ruling applies in all strict liability cases or rather only in product liability cases, the context in which the statement was made. At trial, Ratliff did not argue that his theory of strict liability opened the door to such evidence, precluding its review as a ground on appeal. *McBride v. State*, 213 Ga. App. 857, 858 (3) (c) (446 SE2d 193) (1994).

(b) Ratliff's expert witness, Dooman, testified about the degradation of the switch site. On cross-examination, CSX asked if it was true he had not inspected the site before drawing his conclusions. Dooman responded: "That's correct, by the time I got involved . . . ," and the court stopped his explanation. Outside the jury's presence, the court accepted Ratliff's statement that Dooman would have testified that it was his understanding the drainage and support problems were cured by the time he became involved. Ratliff contends he had a right to ask Dooman about this understanding after CSX elicited Dooman's statement that he had not inspected the site. Ratliff did ask Dooman if he thought he had sufficient information to form a considered opinion, and he answered "absolutely."

The court did not abuse its discretion in limiting Dooman's testimony. Evidence of a subsequent modification should not be admitted if "the potential for prejudice in the admission of [the] evidence substantially outweighs its probative value." *West v. Nodvin*, 196 Ga. App. 825, 828 (3) (b) (397 SE2d 567) (1990). Here that potential was great; the jury could have taken Dooman's explanation as raising a reasonable inference that CSX recognized and admitted negligence. *Brooks*, supra. Additionally, as Dooman was confident of the reliability of his opinion based on the information he had, the modification of the switch site and his noninspection for this reason were not material to it.

(c) Ratliff also attempted to introduce the evidence to impeach a CSX witness whose testimony included reference to measurements of the site. He contends his right to a thorough and sifting cross-examination included the right to ask whether the measurements about which the witness testified were taken after the modifications. Voir dire of the witness showed that the measurements had not been changed by any subsequent modification. Thus, the information would have had little or no probative value. It was not error to conclude that such value was outweighed by the potential prejudicial aspects of the evidence. *West*, supra.

2. The next question is whether the court erroneously limited Ratliff's examination of his witness Thomas, a CSX employee who testified about the condition of the switch site. When Ratliff asked Thomas about the site's condition since 1969, the date Thomas first began working there, CSX objected on grounds that the lengthy time frame was irrelevant to the condition of the site at the time of the incident. The jury was excused, and CSX moved for mistrial, arguing Ratliff was pursuing testimony about the long-term condition of the switch site solely in an effort to prejudice the jury against CSX and elicit a punitive judgment when punitive damages were not allowed. During a long and sometimes unfocused discussion, CSX also contended that no issue concerning "years of neglect" had been previously introduced into the case.

The record does not show the court forbade Thomas to testify on any matter about which Ratliff's earlier witness, Cole, had testified. Rather, in trying to determine what testimony Thomas would give concerning what time frame, the court referred to Cole's earlier testimony; it did not state that Thomas could not testify on the same issue. The court's inquiry, in light of CSX's motion for mistrial, concerned the testimony to be given about the condition of the switch at the time of the accident and the notice CSX had of the conditions which produced the alleged defect. Although Ratliff contends the court's ruling in denying the motion, taken in context, included a ban on any testimony similar to Cole's, the only clear statements from the

court were that the motion was denied and Ratliff should move on to relevant areas of testimony. Ratliff did not ask for any clarification of the court's ruling, and the court had previously stated it would allow Thomas to testify about whether CSX had notice the switch was defective.

Thomas did testify as to the condition of the switch on the date Ratliff was injured, that the switch was hard to manipulate and that this defect had been often reported. He stated he had not reported the vertical movement of the track. The only testimony Ratliff now contends Thomas would have given that he did not actually give involved the historical development of the drainage problems.

If there was error, there was no harm. Cole related his knowledge of the historical development of problems at the switch site, and Dooman described how the site problems developed over time. Given this testimony and Thomas's, the excluded testimony would have been cumulative. See *Hathcock v. State*, 214 Ga. App. 188, 192 (7) (447 SE2d 104) (1994).

3. Ratliff also contends the court erroneously prevented Dooman from testifying as to the bases of his opinions. As to Dooman's decision not to visit the site, it has been addressed in Division 1 (b). As to information Dooman used in reaching his opinions, the argument is not supported by citation to the record where such testimony was excluded or a proffer of testimony was made. The enumeration is deemed waived pursuant to Court of Appeals Rule 27 (c) (2).

4. Harm is claimed by the court's rebuke of Ratliff's counsel for asking an improper question. It is argued that he should be excused from his failure to move for mistrial because the prejudice did not become substantial until it was added to other prejudice resulting from admission of certain evidence. He did not move for a mistrial at that time either, waiving the issue. See *Carr v. State*, 214 Ga. App. 367, 368 (2) (448 SE2d 33) (1994).

5. Finally, Ratliff urges that copies of 14 letters to him from various CSX personnel should not have been sent out with the jury. The letters dealt with CSX retraining and rehabilitation programs and CSX's attempts to enroll Ratliff in them. He did not object when the letters were admitted. Instead, he contends that after the court granted his motion for directed verdict on the issue of whether he must mitigate his damages, they became irrelevant to any jury issue and served only to prejudice the jury against him. Neither the court's grant of the motion as to mitigation nor Ratliff's motion to have specific documents excluded was recorded. It appears, however, that the court allowed the letters to go to the jury because they had been discussed and admitted during Ratliff's testimony. Again, if there was error, it was harmless. The general content of the letters — that CSX tried to involve Ratliff in rehabilitation, education, and different em-

ployment opportunities with CSX — had already been thoroughly aired before the jury through testimony. Moreover, "[w]here an error . . . in the admission or exclusion of evidence relates only to the issue of damages, and the jury finds the defendant not liable, the error is harmless because it does not affect the verdict." *Pouncey v. Adams*, 206 Ga. App. 126, 127 (1) (424 SE2d 376) (1992).

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED OCTOBER 23, 1995 —
RECONSIDERATION DENIED NOVEMBER 9, 1995 — 

*Burge & Wettermark, Michael J. Warshauer, James R. Holland II, Lyle G. Woodruff,* for appellant.

*Alston & Bird, Jack H. Senterfitt, Robin G. Mayer,* for appellee.