## A96A0796. ROYALS v. GEORGIA PEACE OFFICER STANDARDS & TRAINING COUNCIL et al.
(474 SE2d 220)

BIRDSONG, Presiding Judge.

This is an appeal from a defense verdict in a wrongful death suit. Appellant Pang Y. Royals brought suit under the Georgia Tort Claims Act, individually and as executrix of the estate of Charles E. Royals, against appellees/defendants the Georgia Peace Officer Standards & Training Council and the Board of Regents of the University System of Georgia. This litigation arose following the death of Officer Royals on June 10, 1991, of a heart attack allegedly sustained as a result of the physical exertion and environment experienced during a training exercise sponsored by appellees. Prior to trial appellees filed a motion in limine to exclude evidence of certain alleged remedial measures. Specifically, after the incident, language was changed in course brochures to include warnings of the "very intense physical demands" of the course and that "officers should be in very good physical condition." Additionally, appellees thereafter required the use of a sign-up sheet or application form containing a release of liability for injury, damage, or death and/or a purported acceptance (by an applicant) of risk and responsibility for any sustained injuries or harm arising from the training course. The trial court granted the motion in limine excluding the evidence unless subsequent testimony "opened the door" for admission. Appellant contends the testimony of Greg Sewell thereafter opened the door for admission of the remedial evidence, but the trial court erroneously continued to exclude it.

Appellant enumerates that "the trial court erred by failing to recognize an exception to the subsequent remedial measure rule where the defendant denied the existence of a duty to warn and instruct their student, denied the existence of any danger requiring remediation, and gave false testimony concerning the need for any remediation." Appellant asserts the remedial evidence should have been allowed because: (1) it tended to demonstrate the existence of a duty by appellees to screen and warn course applicants, a duty whose existence appellees consistently denied; (2) appellees denied the fea-

sibility of including the additional warning language in the course brochure prior to the incident in direct contradiction to the excluded evidence; and (3) appellees presented direct and unimpeached testimony during trial that applicant screening and warnings were not necessary, had never been done, and would not be done in the future. *Held*:

1. Evidence of subsequent remedial measures generally is inadmissible in negligence actions, because the admission of such evidence basically conflicts with the public policy of encouraging safety through remedial action, for the instituting of remedial safety measures might be discouraged if such conduct is admissible as evidence of negligence. *Wilson Foods Corp. v. Turner*, 218 Ga. App. 74, 77 (4) (460 SE2d 532); accord *Gen. Motors Corp. v. Moseley*, 213 Ga. App. 875, 882 (4) (447 SE2d 302). However, " 'there are several exceptions to that rule, "such as when the subsequent repair, change, or modification tends to prove some fact of the case on trial (other than belated awareness of negligence, of course), to show contemporary knowledge of the defect, causation, a rebuttal of a contention that it was impossible for the accident to happen in the manner claimed, and so on." [Cit.] . . . Such evidence may also be admitted where the feasibility of repair or modification is an issue. [Cit.]' " *Wilson Foods*, supra at 77-78 (4). The admission of remedial evidence for purposes of impeachment is controversial, and such an " 'exception must be applied with care [and admitted only in conjunction with carefully tailored limiting instructions], since any evidence of subsequent remedial measures might be thought to contradict and so in a sense impeach a party's testimony that he was using due care at the time of the accident. . . . If this counted as "impeachment" [it] would swallow the rule.' " (Citations omitted.) *Studard v. Dept. of Transp.*, 219 Ga. App. 643 (2) (466 SE2d 236) (1995). A trial court must apply this exception most judiciously to preserve continued viability of the strong public policy against the introduction of evidence of remedial measures for purposes of proving negligence; nevertheless, due consideration must be given that the remedial action rule was not designed as a shield for the introduction of perjury or for the intentional or inadvertent introduction of erroneous material facts. See OCGA § 24-1-2 (rules of evidence are framed to facilitate the discovery of truth). In *Brooks v. Cellin Mfg. Co.*, 251 Ga. 395, 397 (306 SE2d 657), it was held that "[t]he door to rebuttal testimony of remedial measures was opened when counsel questioned the witness" in such a manner as to cause misleading testimony as to a material issue to be presented to the jury; specifically, remedial evidence was admitted (that similarly installed insulation was removed from on top of the lights in other buildings after similarly installed insulation in one building caught fire and the building burned) when, as a result of the

questioning, the jury was allowed to infer that despite being both similarly constructed and insulated the other buildings had not burned. As with the issue of relevancy, the admission of remedial evidence under an impeachment exception lies in the sound discretion of the trial court (*Studard,* supra) and will not be reversed absent manifest abuse. Further, a trial court in its discretion can exclude remedial evidence, though otherwise admissible under an impeachment exception, if " 'its probative value is substantially outweighed by the risk that its admission will unduly prejudice or mislead the jury or confuse the issues being tried.' " (Citations omitted.) Id. at 645 (2).

2. Appellant contends that exclusion of the remedial evidence was error as it "tends to demonstrate the existence of appellees' duty to screen and warn course applicants," and thus serves as "critical proof" of a duty which appellees consistently denied existed. Assuming without deciding that the remedial evidence in question would have been relevant to demonstrate the existence of appellees' duty "to screen and warn," the issue remains whether the probative value of such evidence was substantially outweighed by its potential for prejudice.

The trial court charged the jury, inter alia: "You must determine if the defendants owed a legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm. . . . There exists a general duty of ordinary care, which duty applies to schools and universities. . . . I further charge you that one who undertakes to do an act or perform a service for another has the duty to exercise care and is liable for injury resulting from his failure to do so, even though he was not under any obligation to do such an act or perform such a service." Appellant does not enumerate any error in the charging of this instruction or in regard to any failure to charge adequately on a duty to screen and warn. As the jury was adequately charged that one who undertakes to do an act or perform a service incurs a duty to exercise care, the introduction of the remedial evidence was not critical in this instance to establish the scope of the duty of ordinary care owed by appellees.

Additionally, the probative value of the remedial evidence at issue (for purposes of proving a duty to screen and warn officers or of proving a general duty to exercise due care) was substantially outweighed in this instance by its potential for prejudice that such evidence would be viewed by the jury primarily as a recognition by and admission of the appellees of their negligence. "Evidence of a subsequent modification should not be admitted if 'the potential for prejudice in the admission of (the) evidence substantially outweighs its probative value.' " *Ratliff v. CSX Transp.,* 219 Ga. App. 53, 55 (1) (b) (464 SE2d 1), citing *West v. Nodvin,* 196 Ga. App. 825, 828 (3) (b) (397 SE2d 567). We will not reverse the correct ruling of a trial court

regardless of the reason therefor. *Tony v. Pollard*, 248 Ga. 86 (1) (281 SE2d 557).

3. Appellant contends the trial court erred by failing to recognize an exception to the subsequent remedial measure rule where the defendant denied the existence of a duty to warn and instruct its student, denied the existence of any danger requiring remediation, and gave false testimony concerning the need for any remediation. The issue thus before us is whether the trial court erred in failing to admit the remedial evidence for purposes of rebuttal or impeachment of the testimony of appellees' witnesses regarding any of these specifically enumerated evidentiary areas.

Appellees did not deny having any duty to warn course applicants as to the physical rigors of the course; rather, appellees contended that course applicants adequately were warned the course would be physically rigorous by registration prerequisites limiting course participation to "full time officers who are full duty status." The director expressly testified there were "warnings" given to course participants; however, he maintained he would not change the course "registration" policy. The director clarified that he believed he had a reasonable basis to conclude that a course participant who was in a full duty status with his department would not have a heart attack while taking the course. In his opinion, full duty status meant that the officer's department "sees them physically and mentally capable of assuming full time law enforcement duties." Further, the course instructor asks the participants in the morning how they are feeling and whether anyone has any physical condition that might cause a problem in successfully completing the course. This was, "at the minimum," what the director was willing to do to make sure a course participant did not have a heart attack. The director testified in the negative when asked the broad question whether he was "willing to change the way you're doing business [in running the course]." However, he subsequently agreed it was a plausible alternative to cause an officer with known heart problems to sit out for six months until the next course to allow time to obtain a medical opinion as to his fitness from the student's doctor, but the director noted that perhaps in the six-month interim, the officer also might need the survival information which the course offered. The director also considered it a viable option to let an officer sit out the physical part of the training and would make that an option if he were aware of the officer's condition.

In adhering to its ruling on the motion in limine excluding the remedial evidence, the trial court concluded the remedial evidence would not rebut the testimony that the criteria for enrolling in the course, being a full time, full duty, regularly employed officer, would not be changed and that the question leading to the director's testi-

mony regarding how far he would now go to protect an officer from dying from a heart attack, which "inevitably bleeds" over into how far appellees subsequently went in giving warnings, could not be answered without violating the ruling on the motion in limine. We agree that the remedial evidence would not rebut testimony that the criteria for enrolling in the course would not be changed. We further find that it is in the trial court's sound discretion whether to admit evidence under the rebuttal exception to the remedial evidence rule when the door, if opened at all, is opened by the skillful crafting of a question that cannot be answered either negatively or positively by a witness without forcing the door ajar. To hold otherwise would render ineffective the ruling granting the motion in limine; such a procedure clearly violates the spirit and intent of the ruling. This holding is consistent with the general rule that "[a] party may not question a witness concerning inadmissible matter and then elicit testimony thereafter to be impeached with evidence inadmissible in the case-in-chief." *State v. Rocco*, 259 Ga. 463, 467 (1) (384 SE2d 183) and cases therein cited. Further, "[a]dmission of evidence lies in the sound discretion of the trial court, and we will not reverse in the absence of a showing of abuse of discretion." *Schill v. A. G. Spanos Dev.*, 217 Ga. App. 260, 262 (457 SE2d 204). "Heeding the warning in [*Studard*, supra] and deferring to the discretion the trial judge has in deciding such evidentiary matters, we find no abuse of discretion." Id. at 645 (2). The answers given by the director to appellant's questions on cross-examination were not of such a nature that if allowed to go unrebutted left the jury with an unfair impression. *Doster v. Central of Ga. R. Co.*, 177 Ga. App. 393, 401 (339 SE2d 619), where unrebutted testimony would have left the jury with an unfair impression, is distinguishable from the facts in this case; likewise distinguishable is *Gunter v. Jackson Elec. Membership Corp.*, 198 Ga. App. 629, 631 (2) (402 SE2d 309) where the witness opened the door by giving non-responsive answers to questions during his subsequent direct examination.

Additionally, the probative value of the remedial evidence, under the attendant circumstances, was substantially outweighed by its potential for prejudice of the jury. *Ratliff*, supra. We will not reverse the correct ruling of the trial court regardless of the reason therefor. *Tony*, supra.

*Judgment affirmed. Beasley, C. J., and Blackburn, J., concur.*

DECIDED JULY 10, 1996 —
RECONSIDERATION DENIED AUGUST 5, 1996 — 

*Adams & Ellis, James R. Gardner, Ronald C. Berry, James K. Lange*, for appellant.

*Michael J. Bowers, Attorney General, Beckmann & Pinson, Walter W. Ballew III*, for appellees.