A97A1392. CSX TRANSPORTATION, INC. v. MONHOLLEN.
(494 SE2d 202)

BLACKBURN, Judge.

CSX Transportation, Inc. (CSX) appeals from a jury verdict in favor of Terrell Monhollen. Monhollen sued CSX, his former employer, under the Federal Employers' Liability Act (FELA), 45 USC § 51 et seq. Monhollen claimed he was injured as a result of CSX having exposed him to harmful solvents in his workplace. CSX argues that the judgment for Monhollen must be reversed because Monhollen elicited testimony which violated a motion in limine. CSX also claims that the court erroneously admitted evidence of subsequent remedial measures and failed to grant its motion for directed verdict.

1. CSX argues that the jury's verdict was poisoned because Monhollen elicited testimony from certain witnesses in violation of the court's order on a motion in limine.[1] The applicable standard of review provides that a violation of a motion in limine alone is not sufficient to establish reversible error. *Verde v. Granary Enterprises*, 178 Ga. App. 773, 774 (2) (345 SE2d 56) (1986). "The introduction of the evidence must still be shown to be harmful error." Id. at 774 (2).

The record indicates that CSX filed a pretrial motion in limine seeking to restrict Monhollen from eliciting testimony from his co-workers regarding any physical effects they experienced from exposure to solvents in the workplace. Monhollen and his co-workers repaired diesel locomotive engines for CSX and extensively used

[1] FELA is a federal cause of action, but the admissibility of evidence in such a case is governed by state law. See *Central Vermont R. Co. v. White*, 238 U. S. 507, 509-510 (35 SC 865, 59 LE 1433) (1915).

chemical solvents to clean the engines. The solvents caused the men to become dizzy, lightheaded, and ultimately pass out, and it was this type of testimony which CSX sought to exclude from any witness except Monhollen. The court heard argument on this motion both before and during trial and made various rulings on the motion over the course of the trial.

(a) CSX claims Monhollen violated the motion in limine when, in opening statement, his counsel referred to physical effects the chemicals had on CSX employees.[2] CSX claims this violated the court's ruling on the motion in limine because the court had ruled that only employees who worked at the same time as Monhollen doing the same work he did could testify about their subjective physical symptoms, and then only about the symptoms they had specifically reported to CSX. According to CSX, Monhollen's general reference to physical symptoms violated the specificity requirements of the court's ruling.

However, the record indicates that at the time of opening statements, the court's ruling was not as specific as CSX contends.[3] Before opening statements, the court heard argument on the motion, issued a ruling similar to that as stated by CSX, and then changed its mind and reserved ruling on the issue. Just prior to opening statements, the court made the following ruling: "[C]oncerning the issues of notice [to CSX] and the other acts [meaning the employees' physical symptoms], I will allow other acts to come in for the limited purpose of notice."

Accordingly, Monhollen's counsel's comments during opening statements did not violate the court's ruling on the motion in limine as it stood at that time. The court had ruled that the physical symptom evidence was admissible and, after having reserved its ruling, had not otherwise qualified the admission of such evidence in the ways that CSX contends. Even assuming arguendo that a violation occurred, reversal is not warranted. Within the context of the nearly 2,000 pages of transcript from the trial of this case, the statements CSX complains of do not rise to the level of harmful error.

(b) CSX argues that the testimony of Phillip Girdner violated the motion in limine. Specifically, CSX claims Monhollen improperly elicited testimony from Girdner regarding physical symptoms which Girdner did not report to CSX. At the time Girdner testified, the trial

---

[2] CSX sets forth in its brief four instances where it claims Monhollen violated the motion in limine, and because we will not cull the record in search of error, see *Vitner v. Miller*, 223 Ga. App. 692, 693 (1) (479 SE2d 1) (1996), we restrict our review of the alleged violations to those four instances.

[3] While CSX's version of the court's ruling is not incorrect, it was not made until the testimony of the second witness in the trial, well after opening statements were delivered.

court's ruling permitted fellow employees who worked at the same time period as Monhollen doing similar work to testify regarding their physical reactions to the solvents, provided the employees had reported these same reactions to CSX at the time that they occurred.[4] This same ruling remained in effect for the remainder of the trial.

Girdner's testimony was not harmful error, and the notice to CSX which CSX claims is lacking in his testimony was established by his statement that he informed his supervisor that the fumes from the solvents made him dizzy. On one occasion Girdner's testimony did exceed the bounds of the court's ruling, but when he repeated this exact same testimony a short time later, the court sua sponte gave a curative instruction to the jury to disregard that testimony. It also granted CSX's motion to strike the testimony and again instructed the jury not to consider it. CSX's contention is accordingly without merit.

(c) CSX asserts that Donnie Adkins' testimony violated the motion in limine. Adkins testified that it was standard practice for CSX employees to take "fresh air breaks," ostensibly to escape the solvent fumes. CSX argues that because Adkins never informed CSX that he needed to take fresh air breaks, his testimony constituted evidence of physical symptoms of which CSX had no notice.

Adkins' testimony did not violate the motion in limine because it contained no reference to any physical effects which solvent fumes had on him. While his testimony that he took fresh air breaks might have allowed the jury to deduce the fact that the solvent fumes physically affected him, he did not testify as to what those physical effects were, and a fresh air break itself is not a physical symptom. Moreover, as evidence of fresh air breaks taken by employees had already been properly admitted through the testimony of Phillip Girdner, Adkins' testimony was merely cumulative and could therefore not result in reversible error. See *Henry v. Watkins*, 219 Ga. App. 80, 82 (2) (464 SE2d 215) (1995).

(d) In closing argument, Monhollen's counsel argued that "people" were getting dizzy and drunk from solvent fumes at CSX's facility. CSX argues that this broad comment violated the specificity of the court's order on the motion in limine. However, Monhollen presented admissible testimony from four different witnesses which supported his counsel's statements. "While counsel should not be permitted in argument to state facts which are not in evidence, it is permissible to draw deductions from the evidence." (Punctuation omit-

---

[4] CSX also makes a vague argument that testimony from co-workers of Monhollen who did not have the same job as he violated the motion in limine. However, the court's order on the motion in limine did not require witnesses to share the same job. It only required the witnesses to have used the solvents to degrease train parts.

ted.) *Miller v. Coleman*, 213 Ga. 125, 130 (6) (97 SE2d 313) (1957). Monhollen's counsel's statement was therefore within the scope of permissible argument, and CSX's contention is without merit.

2. CSX claims the trial court erred in admitting evidence of subsequent remedial measures and alternatively claims that Monhollen's use of such evidence violated the court's ruling on that issue and impermissibly influenced the jury's verdict. We review a trial court's decision on the admissibility of subsequent remedial measure evidence under the abuse of discretion standard. See *Ratliff v. CSX Transp.*, 219 Ga. App. 53, 55 (1) (b) (464 SE2d 1) (1995). Additionally, "[e]vidence of a subsequent modification should not be admitted if the potential for prejudice in the admission of the evidence substantially outweighs its probative value." (Punctuation omitted.) Id.

The evidence shows that a contested issue throughout the trial was whether or not CSX had respirators available for its employees to use, so as to limit their inhalation of harmful solvent fumes. Monhollen's evidence on this issue showed that under Occupational Safety & Health Association (OSHA) requirements, CSX was required to have a respirator program in place. His other evidence indicated that respirators either were not provided to CSX workers or were defective if provided. His evidence further showed that had respirators been properly provided to him, the brain damage he suffered from years of solvent exposure would not have occurred.

CSX's witness on the respirator issue, Thomas Hedrick, testified that CSX did make respirators available to its workers. While cross-examining Hedrick, Monhollen's counsel attempted to elicit testimony from him that no respirator program (as required by OSHA) was actually in place at CSX until April 19, 1991, after Monhollen had left CSX's employ. Hedrick had written a letter stating that the respirator program was introduced on April 19, 1991, and when Monhollen's counsel attempted to show Hedrick this letter, the jury was taken out and the court heard argument on the admissibility of the subsequent remedial measure evidence. The court ruled that the evidence was admissible "concerning this respirator program," as the steps CSX took to provide a safe workplace, including the use of respirators, was a controverted issue in the trial. The letter, however, was not introduced into evidence and is not contained in the record.

"Evidence of subsequent remedial measures generally is inadmissible in negligence actions. . . . However, there are several exceptions to that rule, such as when the subsequent repair, change, or modification tends to prove some fact of the case on trial (other than belated awareness of negligence, of course), to show contemporary knowledge of the defect, causation, a rebuttal of a contention that it was impossible for the accident to happen in the manner claimed, and so on." (Punctuation omitted.) *Royals v. Ga. Peace*

*Officer Standards &c.*, 222 Ga. App. 400, 401 (1) (474 SE2d 220) (1996).

In this case, the subsequent remedial measure evidence falls within the exception of proving a material fact, i.e., that CSX failed to comply with OSHA's respirator program requirements while Monhollen was employed with CSX. The materiality of this fact is illustrated by the extensive charge the jury received on the OSHA respirator requirements. Additionally, inasmuch as one of Monhollen's witnesses testified that had CSX complied with OSHA's requirements, its employees would have been protected from the harmful effects of the solvents, this evidence also bears upon the causation exception to the subsequent remedial measures rule. The trial court therefore did not abuse its discretion in admitting such evidence, and CSX's contention that Monhollen's counsel exceeded the scope of the court's ruling with respect to this issue is not supported by the record.

CSX also argues that the court failed to give an appropriate limiting instruction in connection with the remedial evidence, as suggested by *Stuckey's Carriage Inn v. Phillips*, 122 Ga. App. 681, 687 (178 SE2d 543) (1970). However, CSX made no request for such an instruction. "[I]n the absence of an oral request for a limiting instruction at the time the evidence is introduced, or a proper written request to so charge the jury at the conclusion of the case, it is not reversible error to fail to give a specific instruction limiting the relevancy of the evidence." *Patterson v. Lauderback*, 211 Ga. App. 891, 893 (2), n. 1 (440 SE2d 673) (1994), overruled on other grounds, *Warren v. Ballard*, 266 Ga. 408, 410 (467 SE2d 891) (1996).

3. CSX alleges that the trial court erred in failing to grant its motion for directed verdict, as Monhollen presented no evidence of foreseeability of harm. "A reasonable foreseeability of harm is an essential ingredient of FELA negligence." (Punctuation omitted.) *Bagley v. CSX Transp.*, 219 Ga. App. 544, 545 (1) (465 SE2d 706) (1995). With respect to the standard of review for this enumeration, "[i]n a FELA case, a directed verdict is possible only when there is a *complete absence* of probative facts supporting the nonmovant's position." (Punctuation omitted; emphasis in original.) Id. at 546 (1).

In support of his contention that CSX failed to supply him with a safe workplace, Monhollen's experts testified that due to his years of exposure to a degreasing solvent known by the trade name Dowclene, Monhollen contracted a disease known as toxic encephalopathy. The experts defined this disease as irreversible, incurable brain damage. In response to this evidence, CSX's witnesses testified that toxic encephalopathy was unknown or unsubstantiated in science during the time Monhollen was working with solvents at CSX, and therefore CSX could not be charged with knowledge, either actual or construc-

tive, that exposure to solvents could cause toxic encephalopathy. This being so, CSX argues, a directed verdict was demanded because it had no foreseeability of Monhollen's specific harm.

We cannot agree. The federal law in this area does not require, as CSX argues, foreseeability of the specific harm which resulted from the tortfeasor's negligent act in order for liability to attach. "It is widely held that for a defendant to be liable for consequential damages he need not foresee the particular consequences of his negligent acts: assuming the existence of a threshold tort against the person, then whatever damages flow from it are recoverable." *Gallick v. Baltimore & Ohio R. Co.*, 372 U. S. 108, 120 (83 SC 659, 9 LE2d 618) (1963). "To recover, the plaintiff must prove that the [defendant] railroad, with the exercise of due care, could have reasonably foreseen that a particular condition could cause injury." *Davis v. Burlington Northern*, 541 F2d 182, 185 (8th Cir. 1976).

In this case, Monhollen presented evidence that CSX's negligent act consisted of maintaining working conditions which continuously exposed him to dangerous chemicals without adequate safeguards for his health and safety. Monhollen's evidence also showed that although CSX might not have known that toxic encephalopathy could result from solvent exposure, CSX did know that the solvents its employees were using were dangerous and were toxic to the central nervous system, and for this very reason exposure to the solvents was regulated by CSX itself and by OSHA. In accordance with *Gallick*, supra, this exposure constitutes "the existence of a threshold tort against [Monhollen, so that] whatever damages flow from it are recoverable." *Gallick*, supra at 120.[5]

Monhollen's evidence of CSX's negligence in this regard was ample. He showed that CSX did not institute and maintain a respirator program as mandated by OSHA to protect its employees from harmful solvent fumes and, in many cases, did not provide respirators at all. He demonstrated that CSX knew that employees were complaining of dizziness and drunkenness from the solvent fumes, but did not monitor the air in the workplace to assess the level of fumes present to make sure workers were not exceeding the permis-

---

[5] It is this knowledge which CSX had of the risks associated with the use of solvents and of their toxicity to the central nervous system which distinguishes this case from *Bagley v. CSX Transp.*, supra, cited by CSX for the proposition that Monhollen had to show foreseeability of toxic encephalopathy itself. While the plaintiff in *Bagley* had to show that the defendant knew that his exposure to asbestos dust placed him at risk for contracting the specific disease asbestosis, the decision in that case centered on the defendant railroad's ignorance of the risk of exposure to asbestos and its resulting medical consequences. In this case, CSX was charged with knowledge that Dowclene was toxic to the central nervous system, and therefore any resulting injury from that toxicity was foreseeable without proof of foreseeability of the specific disease of toxic encephalopathy.

sible exposure levels for the chemicals. Additionally, CSX failed to read or abide by the manufacturer's warnings regarding physical effects of exposure to Dowclene as contained on the side of the Dowclene barrels and failed to enforce its own safety regulations in this regard.

"[U]nder the FELA, the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played *any part, even the slightest,* in producing the injury." (Punctuation omitted; emphasis in original.) *Harbin v. Burlington Northern R. Co.,* 921 F2d 129, 131 (7th Cir. 1990). Monhollen has presented evidence both that CSX's negligence played a part in producing his injury, and that the possibility of injury was foreseeable to CSX. Inasmuch as a directed verdict is possible only when there is a complete absence of probative facts supporting the nonmovant's position, the trial court did not err in denying CSX's motion for directed verdict.

*Judgment affirmed. Pope, P. J., and Johnson, J., concur.*

DECIDED OCTOBER 28, 1997 —
RECONSIDERATION DENIED NOVEMBER 24, 1997 — 

*Casey, Gilson & Williams, James E. Gilson, Matthew H. Roane,* for appellant.

*Burge & Wettermark, F. Tucker Burge, James H. Wettermark, Van K. McCombs II,* for appellee.