## A98A1905. RUSSELL et al. v. PARKFORD MANAGEMENT COMPANY, INC.

### (508 SE2d 454)

JOHNSON, Presiding Judge.

This is a premises liability suit brought by James Russell and Terri Johnson (hereinafter "tenants") against Parkford Management Company, Inc. The tenants have provided this Court with a partial transcript of the trial.

Parkford is the manager of the Royal Creek Apartments where the tenants resided. The tenants allege that Michael Cole, a teenage resident of the apartments, began to harass them and other residents by making unsolicited sexual comments and advances. The tenants reported this conduct on several occasions to Parkford's management personnel. The tenants assert that on one occasion, the assistant manager indicated to the tenants that she would handle the situation.[1] The partial record reveals that on one occasion, Parkford's management personnel refused to disclose Cole's apartment address to Russell and advised Russell that he could report the matter to the police.

Cole subsequently got into an altercation with the tenants at the apartment swimming pool. At some point in the altercation, Cole pulled a knife, stabbed Russell in the neck and kicked Johnson in the ribs.

The tenants brought a suit for damages claiming that Parkford breached its duty of care to them by failing to keep the premises safe and by negligently and recklessly failing to take reasonable and prudent measures to ensure their safety. A jury verdict was returned in favor of Parkford, and the tenants appeal.

1. The tenants assert that the trial court erred in not allowing evidence that Parkford evicted the Cole family after the pool incident. According to the tenants, this evidence was admissible to refute Parkford's evidence that it was not feasible for Parkford to evict Cole before the attack on the tenants occurred. For the following reasons, this enumeration is without merit.

The eviction evidence at issue is evidence of a subsequent remedial measure taken by Parkford following the alleged tortious incident. In this state, evidence of subsequent remedial measures generally is inadmissible in negligence actions because such evidence usually is introduced to show that the defendant thereby impliedly admitted "his realization of negligence." *Dept. of Transp. v. Cannady*, 230 Ga. App. 585, 587 (1) (497 SE2d 72) (1998); *Royals v. Ga. Peace Officer &c. Council*, 222 Ga. App. 400, 401 (1) (474 SE2d 220) (1996).

---

[1] The partial transcript does not reveal what action, if any, the manager took following the complaint; however, Cole was not evicted prior to the incident.

There are, however, some limited exceptions to this rule. For example, in *Royals*, supra, we recognized that evidence of feasibility of repair or modification could be admitted to controvert evidence admitted to show the lack of feasibility of such repairs.

The tenants contend that a "feasibility" exception exists in this case because the feasibility of evicting Cole before the tortious incident occurred was placed in issue by Parkford. We are not persuaded. Further expansion of the limited exception recognized in *Royals*, supra, regarding " ' "feasibility of repair or modification," ' " would greatly undermine the general rule that evidence of remedial measures is not admissible.

The evidence of the ultimate eviction of the Cole family was primarily being introduced for the purpose of impeaching the testimony of Parkford that it was not feasible to evict Cole before his tortious attack occurred. We have previously held that the admission of evidence of remedial measures for purposes of impeachment is controversial. Such an exception must be applied with care and admitted only in conjunction with carefully tailored limiting instructions, since any evidence of subsequent remedial measures might be thought to contradict, and so in a sense impeach, a party's testimony that it was using due care at the time of the incident. If this counted as "impeachment," it would swallow the rule. See *Royals*, supra.

While the remedial measures rule was not designed as a shield for the introduction of perjured testimony or other erroneous material facts, the trial court must apply the limited exceptions to this rule "most judiciously" so as to preserve the strong public policy against the introduction of evidence of remedial measures to prove negligence. *Royal*, supra. It lies in the sound discretion of the trial court whether to admit evidence of remedial measures under an impeachment exception. We will not reverse the trial court's determination absent manifest abuse. A trial court in its discretion may exclude evidence of remedial measures, even though such evidence is otherwise admissible under an impeachment exception, if its probative value is substantially outweighed by the risk that its admission will unduly prejudice or mislead the jury or confuse the issues being tried. See id. at 402 (1); *Cannady*, supra at 587 (1). The trial court did not abuse its discretion in excluding the evidence at issue.

2. The tenants contend that the trial court erred in denying their *Batson* challenge. See *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). In support of their contention, the tenants have cited certain federal court decisions. While federal court authority is persuasive, it is not binding. *Delaney v. Lakeside Villa, Ltd.*, 210 Ga. App. 430, 431 (3) (440 SE2d 668) (1993). Generally, this Court adopts federal court authority only when it is not in conflict with our own legal precedent and is consistent with our public policy goals.

We affirm the trial court's denial of the tenants' *Batson* challenge. *Batson* involves a three-step process: the opponent of a peremptory challenge must make a prima facie showing of racial discrimination. The burden of production then shifts to the proponent of the strike to give a race-neutral reason for the strike. If a race-neutral reason is given, the trial court then decides whether the opponent of the strike has proven discriminatory intent. *Chandler v. State*, 266 Ga. 509, 510 (2) (467 SE2d 562) (1996).

Without access to a complete transcript of the voir dire of the jury, we cannot conclude that it was clearly erroneous for the trial court to rule that the tenants failed to carry their burden of proving that the race-neutral reasons given by the proponent of the strike were merely pretexts for purposeful racial discrimination. The posture of the evidence in the partial transcript does not support the tenants' *Batson* challenge. Since the voir dire was not transcribed, we must assume that the trial court did not err in its *Batson* ruling. See *Cammon v. State*, 269 Ga. 470, 473 (4) (b) (500 SE2d 329) (1998); *Atlanta Cas. Ins. Co. v. Crews*, 197 Ga. App. 48, 51 (3) (397 SE2d 466) (1990).

It is uncontroverted that the jury venire included twenty-seven prospective jurors, of whom ten were minorities. Parkford exercised six of its seven peremptory strikes to exclude minority venire members from the jury. Thus, the trial court determined that the tenants had made a prima facie showing of discrimination under *Batson* and required Parkford to explain its strikes. See generally *Crawford v. State*, 220 Ga. App. 786, 787 (1) (470 SE2d 323) (1996).

In response, Parkford gave the following multiple reasons for its strikes of the minority jurors: juror no. 4 witnessed domestic disputes in her home. These disputes involved police intervention, yet she did not call the police herself on these occasions. She "blithely talked about" her friends who were gang members. She was an extremely attractive woman who Parkford's counsel perceived would identify with prospective opposing witnesses regarding any alleged claims of harassment. Juror no. 8 had been the victim of a stalker. This juror had psychological training, wanted to go to law school, and was already studying criminal justice. The juror scowled at Parkford's counsel throughout voir dire, and as a result Parkford's counsel perceived that the juror did not like him. Juror no. 14 was familiar with the apartment complex and had a brother who once lived there, thus suggesting that the juror may have negative information about Parkford. She, or a member of her family, had been a victim of domestic violence. She had knowledge of or connections with a gang through family members and friends. Her general demeanor was such that she might "buy into" the plaintiffs' arguments as to liability. Juror no. 17 had been a victim of domestic violence, as well as a victim of a

theft of services, and has also been a victim of a violent crime other than domestic violence. He stated he would hesitate to call the police when threatened with harm. He lived down the street from the apartments, and he appeared to have limited intelligence, based upon his demeanor.[2] Juror no. 20 was familiar with the apartment complex. She was studying for the SAT college entrance examination, and Parkford's counsel did not want to distract her from her studies because the result of the SAT apparently would determine whether the juror would be admitted into college. She experienced domestic violence in her home, yet had not called for help. She had been raped and robbed at an ATM, and was perceived as being sympathetic to Johnson's position in the case. Juror no. 26 had been a victim of domestic violence. She was familiar with the apartment complex and passes by it every day. She was 19 years old, lived with her parents and had never lived in an apartment. She was the alternate choice to juror no. 27, an individual unfamiliar with the apartment complex, except that he had inspected the pool where this incident occurred and was familiar with its layout.

At the second step of the inquiry, the proponent of the strike is required to enunciate a race-neutral explanation for striking the particular juror. The explanation is not required to be persuasive or even plausible. *Jackson v. State*, 265 Ga. 897, 898-899 (2) (463 SE2d 699) (1995). "Essentially, a neutral explanation is one based on something other than the race of a juror and, unless a discriminatory intent is inherent in the explanation, the reason offered will be deemed race neutral. [Cit.]" *Crawford*, supra at 787-788; see *Jackson*, supra. At this second step, "the proffered reasons must be accepted by the trial court so long as they are not inherently discriminatory. [Cit.]" *Jones v. State*, 226 Ga. App. 428, 429 (1) (487 SE2d 62) (1997).

Only in the third step of the inquiry does the trial court evaluate the persuasiveness of the proponent's race-neutral explanation. *Jackson*, supra at 899; see *McKenzie v. State*, 227 Ga. App. 778, 779 (1) (490 SE2d 522) (1997). In reviewing the trial court's evaluation, we must be mindful that the ultimate burden of persuasion regarding racial motivation in the exercise of peremptory strikes rests with, and never shifts from, the opponent of the strike. *Chandler*, supra. In each of these matters, "the findings of the trial court are entitled to great deference, and should not be disturbed unless clearly erroneous." *Jackson*, supra at 900.

Parkford gave multiple explanations for each of its strikes against the minority jurors. "Where there are multiple reasons for

---

[2] The trial court concluded that the juror's perceived limited intelligence was not an acceptable reason under *Batson*.

striking a juror, . . . it *cannot* be *presumed* that a reason applied to one juror, of one race, but not applied to another juror, of another race, is racially motivated." (Emphasis in original.) *Lingo v. State*, 263 Ga. 664, 668-669 (1) (c) (437 SE2d 463) (1993). The tenants argue that in some instances white jurors were not challenged who exhibited at least one, but less than all, of the multiple race-neutral reasons which the proponents gave for the challenge of a black juror. "[A] *Batson* violation does not exist simply because one or more of those racially-neutral reasons was not used by the attorney to strike potential jurors of another race or gender." (Citation and punctuation omitted.) *Holt v. Scott*, 226 Ga. App. 812, 817 (3) (487 SE2d 657) (1997). Moreover, the tenants' counsel conceded on the record that he could not show that any white juror had not been challenged who had revealed the exact same combination of reasons given for the striking of a minority juror.

The tenants have failed to establish a strike pattern that was not race-neutral. We have carefully examined the partial transcript before us, which does not include the voir dire of the jury, and find no appearance of discrimination. "[W]e are not authorized to create an inference of discrimination where none is apparent, and where none has been found by the trial court, to whose findings we must give great deference." *Lingo*, supra at 669 (1) (c). Under the totality of circumstances, as established by the partial transcript, the trial court's ruling that the multiple explanations given for striking each of the minority jurors were race-neutral and that tenants have failed to carry their burden of proving purposeful discrimination was not erroneous.

3. The trial court did not err in denying the tenants' motion for new trial on the grounds addressed in Divisions 1 and 2, above. As a complete trial transcript has not been provided by the tenants, we also must assume that the ruling of the trial court in denying the motion for new trial on the general grounds was not erroneous. See *Atlanta Cas. Ins. Co.*, supra.

*Judgment affirmed. Smith, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED NOVEMBER 2, 1998.

*Deming, Parker, Hoffman, Green & Campbell, Paul M. Hoffman,* for appellants.
*Duncan & Mangiafico, Edgar S. Mangiafico, Jr.,* for appellee.