A99A0946. HORNE v. THE STATE.
(517 SE2d 74)

BLACKBURN, Presiding Judge.

Darrell Ray Horne appeals his conviction, following a jury trial, for driving under the influence of alcohol (OCGA § 40-6-391 (a) (1)) and driving with an unlawful alcohol concentration (OCGA § 40-6-391 (a) (5)), contending that the trial court erred by: (1) denying his motion for a directed verdict of acquittal; (2) denying his motion to suppress evidence of his intoxication because he was illegally stopped; (3) admitting two sequential test results from an Intoxilyzer 5000; and (4) overruling his *Batson* objection. For the reasons set forth below, we affirm.

1. Horne contends that the evidence was insufficient to support the verdict.

On appeal the evidence must be viewed in the light most

favorable to support the verdict, and [Horne] no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. The standard for reviewing a denial of a motion for a directed verdict of acquittal is whether under the rule of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offense.

(Citation and punctuation omitted.) *Lester v. State*, 226 Ga. App. 373, 376 (2) (487 SE2d 25) (1997).

In the early morning hours of November 29, 1997, Corporal David Martin was making routine security checks of businesses in Fayette County. After inspecting a gas station, Martin began following Horne's car, which was the only car in the area at that time of night. Soon thereafter, Horne, who was driving at that time, pulled his car off onto a side road, allowing Martin to pass by him. Martin observed Horne stopping on this side road for no apparent reason in his rear view mirror. Martin continued driving a short way and then pulled into the parking lot of a church where he waited to see if Horne passed by again. Horne did pass by, and, as he did so, Martin saw that the driver was a white male wearing a baseball cap.

Martin followed Horne again and observed him weaving across the centerline into the opposite lane of traffic several times. Horne then pulled into the parking lot of a closed gas station, and Martin continued driving forward. While stopped, Horne changed places with his passenger, Judy Farr. Martin turned his car around and waited for Horne's car to leave the gas station. Afterwards, Martin pulled Horne's car over, and Farr informed Martin that Horne, who was wearing a baseball cap, had been driving, but she switched with him at the gas station because Horne had too much to drink earlier in the evening. Martin noticed that both Horne and Farr smelled like alcoholic beverages, that they were unsteady on their feet, and that their speech was slurred. Martin then arrested both Farr and Horne. The results of an Intoxilyzer 5000 test showed Horne's blood-alcohol concentration to be .157 and .158.

This evidence was ample to support Horne's convictions. See *Jackson*, supra.

2. Horne contends that the trial court erred by denying his motion to suppress all evidence following the initial stop of his car, alleging that Martin made the stop without the appropriate articulable suspicion. However, "[t]his Court has specifically determined that an officer's observation of a motorist's 'weaving' may serve as

sufficient reason to warrant an investigative stop for a possible DUI violation." *State v. Diamond*, 223 Ga. App. 164, 166 (477 SE2d 320) (1996). Moreover, Horne's attempts to elude Martin support a finding that the appropriate articulable suspicion was present in this case.

3. Horne contends that the trial court erred by allowing both of the sequential test results from the Intoxilyzer 5000 breath test into evidence. OCGA § 40-6-392 (a) (1) (B) provides, in pertinent part:

> In all cases where the arrest is made on or after January 1, 1995, and the state selects breath testing, two sequential breath samples shall be requested for the testing of alcohol concentration. For either *or both* of these sequential samples to be admissible in the state's . . . case-in-chief, the readings shall not differ from each other by an alcohol concentration of greater than 0.020 grams and the lower of the two results shall be determinative for accusation and indictment purposes and administrative license suspension purposes.

(Emphasis supplied.) Thus, the statute, itself, clearly contemplates the admission of both sequential test results, and the trial court did not err.

Horne's secondary contention that the trial court erred by allowing the Intoxilyzer printout to go out with the jury as a continuing witness is also misplaced, as "[t]he proscription on the jury's possession of written testimony does not extend to documents which are themselves relevant and admissible as original documentary evidence in a case." (Punctuation omitted.) *Hodson v. Mawson*, 227 Ga. App. 490, 491 (2) (489 SE2d 855) (1997).

4. Horne contends that the trial court erred in overruling his objection to the State's peremptory strike of an African American juror pursuant to *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

> *Batson* involves a three-step process: the opponent of a peremptory challenge must make a prima facie showing of racial discrimination. The burden of production then shifts to the proponent of the strike to give a race-neutral reason for the strike. If a race-neutral reason is given, the trial court then decides whether the opponent of the strike has proven discriminatory intent.

*Russell v. Parkford Mgmt. Co.*, 235 Ga. App. 81, 83 (2) (508 SE2d 454) (1998).

In this case, the State used one of its peremptory strikes against the only African American member of the jury panel, and Horne raised a *Batson* objection. The State explained that it struck this

juror because she had a prior negative experience with police officers and she worked as a social worker. The trial court found these reasons to be sufficiently race-neutral, after which Horne provided no argument or evidence showing otherwise.

> In reviewing the trial court's evaluation, we must be mindful that the ultimate burden of persuasion regarding racial motivation in the exercise of peremptory strikes rests with, and never shifts from, the opponent of the strike. In each of these matters, the findings of the trial court are entitled to great deference, and should not be disturbed unless clearly erroneous.

(Citation and punctuation omitted.) *Russell,* supra at 84.

Based on the record, the trial court appropriately overruled Horne's *Batson* objection. Horne's mere speculation that the State's use of its peremptory strike was racially motivated cannot alter this result. "[W]e are not authorized to create an inference of discrimination where none is apparent, and where none has been found by the trial court, to whose findings we must give great deference." *Lingo v. State,* 263 Ga. 664, 668 (1) (c) (437 SE2d 463) (1993).

*Judgment affirmed. Barnes, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED APRIL 29, 1999.

*Virgil L. Brown & Associates, Virgil L. Brown, Eric D. Hearn, Bentley C. Adams III, Larkin M. Lee,* for appellant.
*Steven L. Harris, Solicitor,* for appellee.