### A03A0338. PHYFER v. THE STATE.
(577 SE2d 56)

ELDRIDGE, Judge.

After a jury trial, Matthew Phyfer was found guilty of the offense of criminal damage to property in the second degree for allegedly causing damage to an automobile that was parked in a school parking lot. Phyfer appeals from the conviction and sentence entered thereon. Finding no error, we affirm.

Viewed in the light most favorable to the verdict,[1] the evidence shows that on January 31, 2001, Marlene Reilly's son, B., drove her

---

[4] 194 Ga. App. 276 (390 SE2d 269) (1990).

[5] Id.

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

1994 Buick Park Avenue to school. B. attended Parkview High School which was located on the same school campus as Camp Creek Elementary School and Trickum Middle School. B. parked the Buick in the Camp Creek Elementary School parking lot. B.'s sister, A. M., a passenger in the car, walked ahead of him to Parkview High School. As B. was walking toward Parkview High School, he saw Phyfer walking toward the Buick. B. hid behind a brown van and watched as Phyfer took an object which appeared to be a key and scrape it over the Buick. B. testified that when he observed Phyfer at the trunk of the Buick, Phyfer appeared to be "really leaning on it and putting a lot of weight and just digging in." B. also observed Phyfer "doing something to the top of the car." B. testified that Phyfer appeared to be placing the key "under the threads and just pulling it up and ripping them."

B. waited until Phyfer left the area, and B. walked back to the Buick. Prior to this incident, there were several minor "key" marks or scrapes in the car's paint; however, now there were "a whole bunch more." New "key" marks appeared on the trunk, the hood, the driver's door, and the passenger's side of the car. The "key" marks on the trunk were deep, went through the paint to the metal, and were about five feet long, and the stitching on the roof was torn.

A. M.'s best friend, K. H., testified that she was in the Camp Creek Elementary School parking lot on the morning of January 31, 2001, and observed Phyfer at the Buick. K. H. testified that she hid behind a dumpster and watched Phyfer "leaning on like keys or something shiny. It might have been a knife. It was just something metal. He was going all the way around the car clockwise." After Phyfer left, K. H. walked over to the Buick and observed deep scratches on the trunk and the door with slivers of paint coming off.
*Held:*

1. For the first time on appeal, Phyfer contends that his trial counsel was ineffective in that he failed to: (1) object to certain evidence as prohibited by motion in limine, and (2) subpoena and call as a witness a police officer who Phyfer alleges would have contradicted B.'s testimony.

The judgment and sentence on the jury's verdict were entered of record on July 1, 2002. On July 11, 2002, current counsel made his appearance of record, and without filing a motion for new trial, even though he had an opportunity to do so, filed a notice of appeal on July 12, 2002.

It is a well-established rule that any allegation of a violation of the right to counsel should be made at the earliest practicable moment. Our Supreme Court has clearly stated that the rule that an ineffectiveness claim must be raised at the earliest practicable moment requires that the claim be

raised *before appeal* if the opportunity to do so is available; that the ability to raise the issue on motion for new trial represents such an opportunity; and that the failure to seize that opportunity is a procedural bar to raising that issue at a later time.

(Citations and punctuation omitted; emphasis in original.) *Landers v. State*, 236 Ga. App. 368, 370 (3) (511 SE2d 889) (1999). Accordingly, since Phyfer obtained new counsel prior to appeal, and counsel had the opportunity to raise the issue of ineffectiveness through a motion for new trial but failed to do so, Phyfer has waived his right to raise the issue on appeal. See *Glover v. State*, 266 Ga. 183, 184 (2) (465 SE2d 659) (1996).

2. Phyfer alleges that the trial court improperly granted the State's motion in limine excluding defense counsel from cross-examining Reilly concerning numerous unrelated 911 calls she had made over the past several years. However, there has been no showing by Phyfer that these alleged 911 calls were in any manner relevant to this case and the issues to be considered by the trier of fact. While Phyfer argues the fact that Reilly made numerous unrelated 911 calls over previous years would go to "the believability of the witness and the truth of . . . her testimony," a witness may not be impeached with irrelevant facts or evidence and cross-examination should be confined to matters that are relevant to the case. *Goss v. Total Chipping*, 220 Ga. App. 643, 645 (2) (b) (469 SE2d 855) (1996); *Bass v. Bass*, 222 Ga. 378, 384 (2) (149 SE2d 818) (1966).

Although a defendant is entitled to a thorough and sifting cross-examination as to all relevant issues, the trial court, in determining the scope of relevant cross-examination, has a broad discretion. Generally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way and to whatever extent, the defense might wish.

(Citations and punctuation omitted.) *Kolokouris v. State*, 271 Ga. 597, 600 (4) (523 SE2d 311) (1999).

3. Phyfer alleges that the trial court improperly prevented him from obtaining school records of B. and K. H. Phyfer argues that such records would have provided a means to impeach the testimony given by one of the witnesses, as B. testified that K. H. rode home with him and his sister after school on the day of the incident, while K. H. testified that she had to serve detention after school and did not ride home with B. However, the transcript reveals that the trial court

made an in-camera inspection of the school files and, thereafter, met with the school board attorney, the prosecutor, and Phyfer's attorney. On the record, the trial court ruled that:

> the information in the files [was] not relevant as to any kind of fight that may have happened and that might be brought up — I don't think it's going to be brought up — and that the attendance records were not, I don't think, germane to what we're doing here today. So both counsel, I think, is satisfied with the Court's ruling. Is that a fair assumption?

In response, Phyfer's counsel stated, "Yes, sir. Again, just with the qualification that the details of the fight and all that will not be brought —." As such Phyfer's counsel "acquiesced in the [trial] court's ruling, and any claim of error with regard thereto is waived." (Footnote omitted.) *Braswell v. State*, 245 Ga. App. 602, 605 (5) (b) (538 SE2d 492) (2000).

4. Phyfer next argues that he was denied his right to a thorough and sifting cross-examination of State witness K. H.

> While the right to a cross-examination, thorough and sifting, shall belong to every party as to the witnesses called against him (OCGA § 24-9-64), yet the scope of the cross-examination rests largely within the discretion of the trial judge, to control this right within reasonable bounds, and his discretion will not be controlled by a reviewing court unless it is abused.

(Citation and footnote omitted.) *Craft v. State*, 254 Ga. App. 511, 513 (3) (563 SE2d 472) (2002). K. H. was 16 years old at the time of trial. The transcript shows that the trial court did not limit the type of questions defense counsel could ask, but limited the manner in which he asked such questions and the number of times the same question could be asked after it was answered. Specifically the trial court ruled as follows:

> You're dealing with a 16-year-old child. She's answering your questions. You are badgering this young lady. You are giving her a rapid-fire cross-examination. She has answered each and every one of the questions that you've given her in the Court's opinion. She does not possess — as she very skillfully pointed out, she's not a lawyer. She is simply trying to tell you what she did the best she could do. Now, I will allow you to cross-examine her, but I'm not going to allow you to rapid-fire, browbeat, a 16-year-old. . . .You're not going to go over and over and over the same hooey.

We find that there was no abuse of the trial court's discretion in refusing to allow questions repeated that had been asked and fully answered or in prohibiting counsel from asking questions in a "rapid-fire" method, especially in light of the witness' youth. See id. (no abuse of discretion in disallowing questions to be repeated that have been asked and answered); *Harris v. Central R.*, 78 Ga. 525, 534 (3) (3 SE 355) (1887) (in allowing a thorough and sifting cross-examination, the trial court has a duty "to protect a witness . . . from being unfairly dealt with").

5. Phyfer contends the State violated motions in limine wherein the trial court excluded testimony regarding: (1) the details of the prior fights between B. and Phyfer, and (2) any mention of the protective orders obtained by Reilly against him.

(a) Phyfer points us to two specific instances where he claims State witnesses violated the motion in limine regarding the prior fights during direct examination. However, in both instances defense counsel did not object to such testimony, and contrary to Phyfer's assertions, during pre-trial motions, the trial court deferred ruling on the complained-of motion in limine stating, "We've talked about [the prior fights] in chambers, but if you make an objection, it certainly will be ruled on timely."

Later, while discussing pre-trial matters, the prosecutor once again brought up the issue of the fights between B. and Phyfer. A colloquy occurred between defense counsel and the prosecutor, and both agreed that evidence of the fights would be limited to the facts that the boys were friends at one time; that they had fights in the past; and that they were not friends anymore. However, after acknowledging such agreement, defense counsel stated that, depending on the testimony of the State's witnesses, he "may ask to approach concerning several questions I have that I believe are extremely relevant, but I don't know at this point whether I'll be asking them or not." The Court made no further ruling on the matter. The trial court having expressly postponed any decision pertaining thereto until evidence was offered at trial, it was incumbent upon defense counsel to object to such evidence at trial. See *Arnold v. Arnold*, 197 Ga. App. 103, 106 (2) (397 SE2d 724) (1990); compare *Reno v. Reno*, 249 Ga. 855 (295 SE2d 94) (1982) (to preserve appellate review, no objection required at trial when a motion in limine has been granted). Hence, the trial court having reserved its ruling on the motion in limine, Phyfer's failure to object to such evidence at trial precludes our review on appeal.

(b) Phyfer points to a third instance in which the State's witnesses offered evidence concerning the prior fights between B. and

Phyfer. However, this testimony came during defense counsel's cross-examination of Reilly when the following transpired:

[Defense counsel:] [Phyfer] and [B.] got in a fight in Myrtle Beach in April of '99; correct?
[Reilly:] No. They did not get into a fight. May I explain.
[Defense counsel:] Please.
[Reilly:] I had taken [Phyfer] to Myrtle Beach with my son because we were on a cheerleading trip with my daughter and felt that he would like to have company, and my daughter and I were not in the condo at the time. We had left [Phyfer] and [B.] Apparently, they were involved in a card game. I wasn't there, of course, to hear it. My understanding was [B.] lost the game and made some comment, and [Phyfer] hit him very hard right here in the forehead; and there was a huge goose egg, a huge bruise, and knocked him out cold. When I got back to the condo, I found my son knocked out. So, no, there was no fight.

Phyfer did not move for a mistrial or request curative instructions, and none were offered. However, in this instance, error, if any, was self-induced as it came during cross-examination, in response to defense counsel's open-ended request that the witness explain why she felt a fight had not occurred, and not during the State's case-in-chief. Therefore, it provides no basis for reversal. See *Hayes v. State*, 244 Ga. App. 12, 14 (4) (534 SE2d 577) (2000); *Birdwell v. State*, 229 Ga. App. 810, 811 (1) (494 SE2d 699) (1997). "[S]elf-induced error cannot be complained of on appeal. [Cits.]" *Shelnutt v. State*, 234 Ga. App. 655, 657 (4) (506 SE2d 643) (1998).

(c) Further, with the exception of the description of B.'s injuries, the testimony Phyfer complains of regarding the prior fights between the two boys is merely cumulative of Phyfer's direct testimony at trial. See *Mullinax v. State*, 242 Ga. App. 561, 563 (1) (530 SE2d 255) (2000) ("Evidence is harmless where admissible evidence of the same fact is before the jury.") (citation and punctuation omitted).

(d) Phyfer also complains that B. testified to the existence of a restraining order against Phyfer in direct violation of the court's ruling on motion in limine. In this regard, the following occurred during the defense counsel's cross-examination of B.:

[Defense counsel:] Okay. And you didn't report this to the principal of the high school?
[B.:] Yeah, we did. First off, it was a concern. When we got home, my mom contacted the police, and I believe — I don't know — I know that the officer, the school officer, Rickard, I

> know the time he knew about the incident, and I know once the restraining orders came, they all knew about that. Now, about the keying, I know there was a time when they were told —.

At this point, defense counsel interrupted and asked that B. respond to his question with a yes or no. No further mention was made of the existence of any restraining order. There was no request by Phyfer for a mistrial or curative instruction, and none was given. "[A] violation of a motion in limine alone is not sufficient to establish reversible error. The introduction of the evidence must still be shown to be harmful error." (Citations and punctuation omitted.) *CSX Transp. v. Monhollen*, 229 Ga. App. 516 (1) (494 SE2d 202) (1997). The witness making a general reference to restraining orders on a single occasion in which it is unclear that the restraining orders were against Phyfer does not rise to the level of harmful error. This contention is without merit.

6. Phyfer alleges that the trial court erred in not allowing him to testify as to his recollection of whether, as a result of the earlier altercation between him and B. at Myrtle Beach, Reilly threatened to have appellant put in jail. Phyfer argues that such testimony was admissible to impeach Reilly's testimony on cross-examination that she never made such a statement. However, the transcript reveals that Reilly never denied making such a statement and testified only that she could not recall if she made such statement. "Where a witness merely states that [she] does not remember, [she] cannot be impeached by the showing of former statements with respect to the facts which [she] claims not to remember. This is true regardless of whether the witness' failure to 'remember' is real or contrived." (Punctuation and footnote omitted.) *Hill v. State*, 250 Ga. App. 897, 902 (1) (553 SE2d 289) (2001). Therefore, this enumeration is without merit.

7. In his last enumeration of error, Phyfer argues that he did not receive a fair trial. However, Phyfer sets forth no additional errors he alleges were committed at trial, making only a general statement that "the totality of the circumstances clearly demonstrate that . . . Phyfer did not receive a fair trial as guaranteed by the United States Constitution, the Constitution of the State of Georgia[,] and procedural due process." To the extent Phyfer is arguing that when the alleged errors are considered together, a fair trial could not result, "[the] [C]ourt and the Supreme Court have held that any error shown upon the record must stand or fall on its own merits and is not aided by the accumulative effect of other claims of error." (Citations and punctuation omitted.) *Fuqua v. State*, 183 Ga. App. 414, 420 (2) (359 SE2d 165) (1987). While the Supreme Court in *Shaw v. State*, 241

Ga. 308, 312 (9) (245 SE2d 262) (1978), found that "if the cumulative effect of improper prosecution tactics was to deny appellant a fair trial, the conviction cannot stand[,]" we find no evidence in this case of improper prosecution tactics. We conclude that Phyfer was given a fair trial.

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED JANUARY 29, 2003.

*Kenneth W. Sheppard,* for appellant.
*Daniel J. Porter, District Attorney, Mary E. Leonard, Assistant District Attorney,* for appellee.