45601.   STUCKEY'S CARRIAGE INN et al.
v. PHILLIPS.

Argued September 11, 1970—Decided October 5, 1970—
Rehearing denied October 26, 1970—

*Falligant, Doremus & Karsman, Stanley Karsman,* for appellants.

*Cowart, Sapp & Gale, G. B. Cowart,* for appellee.

Eberhardt, Judge. While, according to proverb, the cockroach may never be so silly as to approach the door of the henhouse,[1] the cockroach involved in the case at bar evidently had no apprehension about invading Room 219 of Stuckey's Carriage Inn on

---

[1]See Marvin, Curiosities in Proverbs 230 (1916); Wit and Wisdon of the Haytians, Harper's Magazine, 1875.

Jekyll Island, where Mrs. George Phillips was dressing prior to attending a banquet. Perhaps, as repeatedly warned against by Archy, the cockroach-poet who first made his appearance in 1916 in the columns of the New York Sun by the device of leaving messages in his newspaperman-boss's typewriter, this cockroach had determined to revolt and overthrow the human race because of man's inability to manage himself or his environment.[2] It may be that this was because the cockroach as a species had lived on the earth several billions of years before man came along. But whether this particular cockroach actually intended Mrs. Phillips any harm will never be known, as he vanished before his origin and identity were established. In any event he left chaos in his wake, in the midst of which Mrs. Phillips lay sprawled with serious personal injuries.

———————

[2]"The circumstances of Archy's first appearance are narrated in the following extract from the Sun Dial column of the New York Sun . . . We came into our room earlier than usual in the morning, and discovered a gigantic cockroach jumping about upon the keys. He did not see us, and we watched him. He would climb painfully upon the framework of the machine and cast himself with all his force upon a key, head downward, and his weight and the impact of the blow were just sufficient to operate the machine, one slow letter after another. He could not work the capital letters, and he had a great deal of difficulty operating the mechanism that shifts the paper so that a fresh line may be started. We never saw a cockroach work so hard or perspire so freely in all our lives before. After about an hour of this frightfully difficult literary labor he fell to the floor exhausted, and we saw him creep feebly into a nest of the poems which are always there in profusion. Congratulating ourself that we had left a sheet of paper in the machine the night before so that all this work had not been in vain, we made an examination, and this is what we found: [Archy's first composition, instructing his 'boss' to leave a piece of paper in the typewriter every night so that he could write a series of poems showing how things look to a cockroach]." Marquis, "The Coming of Archy," *Archy and Mehitabel,* collected in the Archy omnibus, *The Lives and Times of Archy & Mehitabel,* pp. 19-21 (Doubleday & Co., 1950). Archy's view of the human race from

Plaintiff and all defendants disowned the cockroach. It was contended by defendants that it most probably came into the room in plaintiff's luggage, which she had kept stored in the attic at home, while plaintiff contended that it came in through the door or windows from the leaves, grass, etc., just outside the motel, which furnish a natural habitat for cockroach breeding.

Being unable to perfect service upon an unidentified cockroach, Mrs. Phillips sued Stuckey's Carriage Inn, Wanderer Motel, Inc., and Jekyll Motels, Inc., alleging that the Inn was leased to Wanderer and that Jekyll Motels was the managing agent and operated the Inn. She charged that while she was dressing for going to a banquet and as she was putting on her makeup in Room 219, which she occupied as a paying guest, she felt something crawling on her neck or shoulder. Seeing in the mirror that it was a large cockroach, she snatched off the jacket to her evening ensemble and slung it in an effort to dislodge the roach, which disappeared from her view and she was then unable to locate it. She determined to leave the room and proceed to the banquet and, just as she was about to pick up her gloves from the foot of the bed, she felt something crawling on her thigh above the top of her stockings and concluded that it was the cockroach, which, in its alternations of flying and perching, had invaded her privacy. (This untoward event occurred before the advent of the mini). She became frantic and began thrashing about in an effort to raise her dress and dislodge it and in doing so caught her foot in the bedspread which extended onto the floor and was in some

––––––

the under side was generally painfully critical, and he warned of an insect revolution, at times threatening himself to organize an army of insects to fling at the throats of humans, and at times announcing the formation of various revolutionary societies, such as the "worms turnverein," to attack and overthrow man for his various transgressions, such as those against his environment. See "Certain Maxims of Archy," id. pp. 53-54; "Archy Declares War," id. pp. 114-117; "The Return of Archy," "Peace—At a Price," "Archy Turns Revolutionist," "As It Looks to Archy," *Archy's Life of Mehitabel,* Id. pp. 187-189, 195-199, 226-229, 234-236; "What the Ants Are Saying," *Archy Does His Part,* Id. pp. 475-477.

manner entangled with the bedpost, which caused her to stumble and fall over a chair. The cockroach was gone, never to leap, peep or creep again—but alas, her leg was broken! It was alleged in the complaint that defendants were negligent, inter alia, in permitting cockroaches to be present in her room, and in making up the bed in such a manner that the bedspread spilled over onto the floor, creating a hazardous situation.

Defendants moved for summary judgment, which was overruled; and, upon appeal to this court, we affirmed, holding that "Issues as to the negligence of defendant where insect pests are present in a motel room and as to the alleged improper making up of a bed remain unresolved." *Stuckey's Carriage Inn v. Phillips,* 120 Ga. App. 792 (172 SE2d 208). The case proceeded to trial and, after concluding arguments of counsel, a juror became ill. The parties could not agree to proceed to verdict with eleven jurors, and a mistrial was declared. Defendants appeal from the overruling of their motion for judgment notwithstanding the mistrial, which followed the overruling of their motions for directed verdict. The trial court certified the ruling for immediate review, and the case is before us once again.

■ Defendants first urge that there was no evidence from which the jury could find that defendants had not exercised ordinary care to keep the premises free and safe from insects, pests and rodents. We note that when the case was before us on summary judgment a question of fact was present as to this issue. Defendants had submitted the affidavit of Fred Zapico, who swore that he was the managing director of Stuckey's Carriage Inn, Wanderer Motel, Inc., and Jekyll Motels, Inc., and that defendants had a service contract with Orkin Exterminators, Inc., which frequently inspected and treated the premises for insects and rodents, including roaches. The affidavit and deposition of Ernest James, Orkin's serviceman, established that he serviced the premises a minimum of once per month, and that the charge for the service to defendants was $40 per month. However, in opposition to the motion plaintiff submitted the affidavit of J. E. Johnson, who swore that he was in the pest control business and had many years of experience in the control of roaches and other pests. He set out in detail the economics of the pest control service, and stated that "you

could not possibly properly treat a building the size of the Stuckey's Carriage Inn for $40 a month." He further stated that if any building is properly treated roaches could be controlled. Thus, the fact issue was raised in the summary judgment proceeding.

At the trial there was considerable testimony introduced as to the nature of the services performed by Orkin to control roaches, a particular problem in that area, and as to the cleaning procedures performed by the motel staff. However, contrary to the situation as it existed on motion for summary judgment, plaintiff did not introduce any evidence such as that contained in the affidavit of J. E. Johnson, which was previously before us. Defendants thus insist that they have established that they exercised reasonable care in keeping the premises free from roaches. Plaintiff, on the other hand, points to certain testimony of Ernest James, Orkin's serviceman, and Fred Zapico, the manager of the Inn, elicited on cross examination, contending that this testimony showed that the pest control contract with Orkin was canceled some year and a half to two years after the injury and awarded to another company because of dissatisfaction with Orkin's service. It is argued that the jury could infer from this testimony that defendants were not providing for an adequate pest control program at the time of the injury, and that a jury question was thus presented as to this issue of negligence. We do not agree with this contention.

The testimony referred to was admitted over defendants' objections, and motions to strike it were overruled. The testimony was inadmissible and without probative value as to this issue of negligence, for it is the rule in this jurisdiction, and a virtual universal rule, that evidence of repairs, change of conditions, or precautions taken after an injury is never admissible as proof of negligence of the defendant in not having made the repairs, changed the conditions, or taken the precautions prior to the injury. *Ga. Southern &c. R. Co. v. Cartledge,* 116 Ga. 164 (1) (42 SE 405, 59 LRA 118) (overruling prior decisions to the contrary and adopting the weight-of-authority rule); *Louisville & N. R. Co. v. Barnwell,* 131 Ga. 791 (3) (63 SE 501); *Harrell v. Forsyth County,* 137 Ga. 550 (2) (73 SE 735); *Mitchell v. Schofield's Sons Co.,* 19 Ga. App. 201, 202 (91 SE 275); *Usry v. Augusta Southern R. Co,,* 24 Ga. App. 722, 724 (102 SE 184); *Hines v. Duncan & Nelms,* 25

*Ga. App. 712 (3) (104 SE 519); Evans v. Central of Ga. R. Co.,* 38 Ga. App. 146, 149 (142 SE 909); *Flint River Cotton Mills v. Colley,* 71 Ga. App. 288, 290 (30 SE2d 426); *Atlantic C. L. R. Co. v. Sellars,* 89 Ga. App. 293, 296 (79 SE2d 35); *Lacy v. City of Atlanta,* 110 Ga. App. 814 (4) (140 SE2d 144); Annot., 170 ALR 7, supplemented 64 ALR2d 1296; 2 Wigmore, Evidence, 151, § 283 (3d Ed. 1940); McCormick, Evidence 543, § 252 (1954); Uniform Rules of Evidence, Rule 51; ALI Model Code of Evidence, Rule 308. Such evidence may, in the proper circumstances (see McCormick, supra, p. 545), be admitted for other purposes, as for example to show defendant's ownership or control of the premises or his duty to repair where these are disputed (see *Orr v. Dawson Telephone Co.,* 35 Ga. App. 560 (2) (133 SE 924); Annots., 170 ALR and 64 ALR2d, supra; Wigmore and McCormick, supra); but, if so admitted, the jury should be cautioned as to the limited purpose for which it is received and admonished not to consider it as evidence of negligence or as an admission thereof. Annot., 64 ALR2d 1296, 1305; Judis v. Borg-Warner Corp., 339 Mich. 313 (63 NW2d 647); Lunde v. National Citizens Bank, 213 Minn. 278 (6 NW2d 809 (7)); Lombardi v. Yulinsky, 98 N. J. L. 332 (119 A 873); 2 Wigmore, supra, p. 158; McCormick, supra, p. 545. Consequently we cannot consider this testimony as evidence of defendants' negligence on motion for directed verdict or for judgment notwithstanding the mistrial (Consolidated Contractors, Inc. v. Wilcoxen, 252 SW2d 429 (Ct. App. Ky.). See also Calton v. Louisiana Power & Light Co,, 56 S2d 862 (Ct. App. La.); Commonwealth v. Griesing, 54 Pa. D. & C. 573), and we hold that there was no question for the jury in regard to defendants' alleged negligence in not providing for an adequate pest control program.

■ Defendants further contend that if the bedspread in which plaintiff became entangled were negligently placed on the bed by defendants' employees in such a manner that it was draped about the bedpost, plaintiff nevertheless could not recover because she had equal knowledge of the defective condition. The evidence shows that the room assigned to plaintiff had two ¾ width beds in it, one in which she slept and another which plaintiff had not used except for incidental purposes such as to lay articles of clothing on it. It was the spread of the unused bed in which plaintiff

became entangled. This bed and been made up by defendants' employees and remained in the same condition, or substantially so, from the time plaintiff checked in on the afternoon of November 6 until the following evening when she was injured. At some time prior to the injury she had noticed the manner in which the spread draped over the foot of the bed onto the floor and thought it unusual.

Ordinarily, "one who is familiar with the premises cannot rely for recovery upon the negligence of the defendant in failing to correct a patent defect where such party had equal means with the defendant of discovering it or equal knowledge of its existence." *Barrow v. James,* 107 Ga. App. 377, 378 (130 SE2d 352). See also *Gibson v. Consolidated Credit Corp.,* 110 Ga. App. 170, 173 (138 SE2d 77) quoting 20 RCL 56, § 52; *Standard Oil Co. v. Harris,* 120 Ga. App. 768 (4) (172 SE2d 344). However, this rule does not hold where the circumstances are such as to excuse the plaintiff from exercising the degree of care otherwise required. This latter exception finds expression in the "distraction" or "emergency" cases. The principle applicable here is well stated in *City of Rome v. Phillips,* 37 Ga. App. 299 (2) (139 SE 828). And see *Glover v. City Council of Augusta,* 83 Ga. App. 314, 316 (63 SE2d 422); *City Council of Augusta v. Hood,* 95 Ga. App. 259, 261 (97 SE2d 639); *City of Albany v. Humber,* 101 Ga. App. 276, 282 (113 SE2d 635). If we should hold that the plaintiff's experience when she felt the cockroach crawling up her thigh under her dress, with its claws or feet clinging to her skin, was, as a matter of law, not a "moment of stress or excitement" amounting to a distraction of sufficient magnitude to authorize the jury to find that she is not barred from recovery because she may have exposed herself to a condition of the premises of which she had prior knowledge, we should, in effect, be ruling out the doctrine of distraction as a viable rule.

■ We thus come to the crux of this appeal, and that is whether the defendants were in the exercise of due care in making up the bed in such a manner that the bedspread draped over onto the floor, and whether they should have foreseen or anticipated that such an injury would result.

One of defendants' witnesses testified that the bedspread was draped onto the bed "the regular way we have done it always." "'An

act in accordance with custom is not relieved of its character as negligence as a matter of law merely because of the custom. Citation]. 'By the great weight of modern American authority a custom either to take or to omit a precaution is generally admissible as bearing on what is proper conduct under the circumstances, but is not conclusive . . . An actor will not be allowed to show conformity with his own individual habits in order to prove due care.' [Citations] . . . 'What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not.'" *Dawkins v. Jones,* 119 Ga. App. 796, 798 (168 SE2d 881). As we held in that case, and on motion for summary judgment in this case, where the evidence as to the bed furnishings was the same as now before us with the exception of the above inconclusive testimony, a jury question is presented as to whether defendants exercised ordinary care in the conduct complained of. *Sears, Roebuck & Co. v. Superior Rigging &c. Co.,* 122 Ga. App. 487 (177 SE2d 507).

Defendants contend, however, that the occurrence complained of was unforeseeable as a matter of law. This contention is without merit. "In order for a party to be liable as for negligence, it is not necessary that he should have been able to anticipate the particular consequences which ensued. It is sufficient, if in ordinary prudence he might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might result." *Williams v. Grier,* 196 Ga. 327, 337 (26 SE2d 698). "The most common test of negligence is whether the consequences of the alleged wrongful act are reasonably to be foreseen as injurious to others coming within the range of such acts, and what is reasonably to be foreseen is generally a question for the jury. [Citations]. The question for the jury is whether danger should have been recognized by common experience, or by the special experience of the alleged wrongdoer, or by a person of ordinary prudence and foresight [citations]." *Thomas v. Williams,* 105 Ga. App. 321, 326 (124 SE2d 409).

When this case was before us on motion for summary judgment, we held that the issue as to the negligence of defendants in the alleged improper making up of the bed remained unresolved under

the evidence submitted in connection with the motion. The evidence adduced on this issue at the trial was substantially the same, and we are still unable to resolve it as a matter of law in favor of defendants. See *Sears, Roebuck & Co. v. Superior Rigging &c. Co.,* 122 Ga. App. 487, supra.

4. In the "Statement of Facts" portion of defendants' brief it is stated that "The complaint alleges that all defendant corporations are corporations existing under the laws of the State of Georgia and having agents in Glynn County, Georgia, and further that Stuckey's Carriage Inn is leased to defendant Wanderer Motel, Inc., and that the managing agent for Stuckey's and Wanderer is Jekyll Motels, Inc., which operates Stuckey's Carriage Inn. In our answer we neither admit nor deny these allegations which under Georgia law amounts to a denial and requires proof by appellee. No proof was forthcoming. Accordingly, the plaintiff never established that the defendants were in fact corporations, nor did appellee's evidence establish that there was any relationship between the three corporations so as to make them jointly responsible for the alleged negligence of one."

This point is not raised in the "Argument and Citation of Authorities" portion of the brief, but in any event no reversible error appears. When a defendant "neither admits nor denies these allegations" it does not amount to a denial. It must be alleged that he is without knowledge or information sufficient to form a belief as to the truth of the averment. CPA § 8 (b) (*Code Ann.* § 81A-108 (b)); *Consolidated Pecan Sales Co. v. Savannah Bank &c. Co.,* 122 Ga. App. 536 (4). However, the allegations as to corporate existence are not answered at all and must be consider admitted. CPA § 8 (d) (*Code Ann.* § 81A-108 (d)). Furthermore, if defendants wished to raise this issue, they were required to do so "by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge." CPA § 9 (a) (*Code Ann.* § 81A-109 (a)). A general denial, or a denial for lack of knowledge or information, is insufficient to raise an issue as to defendant's legal existence, and failure to raise the issue by a "direct negative averment" results in a waiver of the defense. 2A Moore's Federal Practice § 9.02.

The assertion that there was no evidence as to the leasing and

operation of the Inn is refuted by the testimony of Fred Zapico, who testified that he was the manager of three motels, Stuckey's Carriage Inn, the Wanderer Motel and the Corsair; that at the time of the injury the Inn was leased to Wanderer Motel, Inc.; and that Jekyll Motels, Inc., of which he was the president, was the managing agent for the motel. While it does not appear on what theory defendant "Stuckey's Carriage Inn"[3] was sought to be held liable, the motion for directed verdict and for judgment notwithstanding the mistrial, as well as the enumeration of error, were joint; and, since they were not meritorious as to all defendants, under familiar principles no reversible error appears as to Stuckey's Carriage Inn.

While the foregoing disposes of the matter, we wish to alert the bar as to certain considerations pertaining to CPA § 8 (b) (*Code Ann.* § 81A-108 (b)). As to the allegations that the Inn was leased to Wanderer Motel, Inc., and that the managing agent was Jekyll Motels, Inc., which operated the Inn, the defendants answered in accordance with CPA § 8 (b) that they were "without sufficient knowledge or information to form a belief as to the truth" of these allegations. Moore points out that the privilege to so plead under Federal Rule 8 (b), identical for purposes here with our CPA § 8 (b), "is of course subject to the requirements of honesty in pleading set forth in Rule 11 [our CPA § 11]. Thus the principle of Rule 8 (b), supra, 'does not apply if the fact as to which want of knowledge is asserted is to the knowledge of the court so plainly and necessarily within the defendant's knowledge that his averment of ignorance must be palpably untrue.' . . The same general principles should apply to a corporation or other party that sues or is sued as an entity. If the officers or other persons in charge of the corporation's affairs have knowledge then the corporation should be held to have knowledge, and if they have information sufficient to form a belief as to the truth of an averment, then the corporation has like information. An artificial entity should be held to the same reasonable standards as the natural person." 2A Moore's Federal Practice 1821, 1825, § 8.22. See also

---

[3]Witness Zapico testified that the Inn was owned by Jekyll Investors, Incorporated, of which he was a stockholder and officer.

Nieman v. Bethlehem Nat. Bank, 32 FSupp. 436 (E. D. Pa.), cited with approval in *Consolidated Pecan Sales Co. v. Savannah Bank &c. Co.,* 122 Ga. App. 536 (4), supra.

While Federal Rule 11 is not verbatim with our CPA § 11, we think the two are identical in purport and intent with respect to honesty and good faith in pleading. There is nothing new in this requirement. Under the old practice a defendant could state in his answer that he could neither admit nor deny the averment because of the want of sufficient information, whereas under CPA § 8 (b) the defendant must allege that he is without knowledge or information *sufficient to form a belief* as to the truth of the averment. That the defendant does not have enough information to make an express denial or admission is no longer sufficient. See the discussion in *Consolidated Pecan Sales Co. v. Savannah Bank &c. Co.,* supra. But even under the old practice, where the defendant answered that he could neither admit nor deny an allegation for want of sufficient information, and the allegation was necessarily within the defendant's knowledge, the answer was considered evasive and an admission of the fact alleged. *Ten-Fifty Ponce de Leon Co. v. C. & S. Nat. Bank,* 170 Ga. 642 (2) (153 SE 751) and cases cited; *Jones v. Lawman,* 56 Ga. App. 764, 770 (194 SE 416); *Eades v. Wheeler,* 74 Ga. App. 333, 335 (39 SE2d 573).

With these standards in mind, it would appear to us that the joint assertion by defendants Stuckey's Carriage Inn, Wanderer Motel, Inc. and Jekyll Motels, Inc., that they were without sufficient knowledge or information to form a belief as to the truth of the allegation that the Inn was leased to Wanderer Motel, Inc. and that the managing agent was Jekyll Motels, Inc., which operated the Inn, is inappropriate. As stated in Mesirow v. Duggan, 240 F2d 751, 756 (CA 8): "That was a matter of record in appellee's control and peculiarly within his knowledge, and, under the law and these circumstances, his answer, saying that he 'was without knowledge or information sufficient to form a belief' as to that matter, did not constitute a denial of the averments of the petition on that score nor put them in issue, and, hence, in the law's regard, they stood admitted . . ." We note, too, that on defendants' motion for summary judgment they submitted the affidavit of Mr. Zapico, who swore that he was the "Managing Director of Stuck-

ey's Carriage Inn, Wanderer Motel, Inc., and Jekyll Motels, Inc.," and then proceeded to give the details of the cleaning, furnishing, and inspection of the rooms, the employment of cleaning staff, etc. And at the trial Mr. Zapico testified that he was an officer and stockholder of Jekyll Investors, Incorporated, which owned the Inn; that the Inn was leased to Wanderer Motel, Inc.; and that Jekyll Motels, Inc., of which he was president, was the managing agent and operated the Inn, and it appears from colloquy at the trial that Mr. Zapico had voluntarily furnished this information to plaintiff's counsel before the complaint was filed. Certainly it should have been available to defendants' counsel and they should not have asserted ignorance on that score in the answer.

We are confident that counsel for the defendants prepared and filed their defensive pleadings at a time of rush in the office, and that there was either an oversight of the requirements of the rules in this particular, or for some reason the information had not then been forthcoming from their clients. Certainly we do not impugn their motives, nor do we question their ability, integrity or purpose to comply. We do, however, wish to emphasize the importance of the rule and of using great care in securing proper information before pleading.

*Judgment affirmed. Jordan, P. J., and Pannell, J., concur.*