A97A2523. DEPARTMENT OF TRANSPORTATION v. CANNADY.
(497 SE2d 72)

ELDRIDGE, Judge.

On July 15, 1992, Adelle C. Cannady, plaintiff-appellee, was a passenger in a car driven by her daughter, Brenda C. Martin, traveling westbound on Georgia State Highway 26, also designated U. S. Highway 80; they had left Brooklet and were driving toward Statesboro, Georgia. Daniel Steven Stafford, Jr., a joint tortfeasor with defendant-appellant, the Georgia Department of Transportation ("DOT"), was driving eastbound toward them on the same road.

As Stafford approached the intersection of Ga. 26 and Grimshaw Road, a county-maintained road, an intense summer thunderstorm struck; while of brief duration, the rain inundated the roadway with rainwater, as well as the surrounding area. Stafford lost control of his car because of the water on the road and hydroplaned across the centerline into the vehicle in which plaintiff was riding, severely injuring her. Immediately prior to the collision, Stafford's vehicle had just rounded a slight curve adjacent to a farmhouse called the Water's House.

The plaintiff sued Stafford for negligent driving and DOT for negligent maintenance of the roadway.

Prior to trial, DOT made a motion in limine to exclude, as an admission of negligence, any evidence of subsequent remedial measures taken on the roadway at the collision scene to deal with the road elevation and drainage. The trial court denied such motion, and the evidence was admitted for a permissible purpose to show notice, feasibility of repair, and as the proximate cause of the collision from DOT's negligent maintenance of the roadway. DOT renewed its objections at trial. The jury returned a verdict against DOT for $2,750,000. The trial court reduced the verdict by the amount paid by Stafford. The trial court entered a judgment against DOT in the amount of $2,650,000, although it acknowledged in the judgment that the Georgia Tort Claims Act, OCGA § 50-21-29, placed "a limit on the recov-

ery" by an individual of $1,000,000. DOT filed a timely appeal from the judgment.

1. The first enumeration of error is that the trial court erred in denying DOT's motion in limine to exclude evidence of subsequent remedial measures and allowing this evidence into the trial of the case. We do not agree.

At pretrial, DOT's motion in limine sought to exclude evidence that the road's superelevation and cross-slope (crown), designed and constructed in 1931, had been deleted for cost reasons in the 1989 resurfacing project and had not been restored until three weeks after the collision. Plaintiff proffered evidence that such repairs were being offered, not to prove an admission of negligence, but to demonstrate the ease, feasibility, and ability to repair; DOT's prior notice and knowledge of the danger; and proximate causation. The evidence showed that cost was the reason for the deletion of the cross-slope and superelevation in 1989 and for failure to restore it in 1991 and 1992 prior to the collision. DOT later renewed its motion, which the trial court denied.

At trial, the evidence showed that the 1931 plans called for a cross-slope (crown) in the straight road and a two-degree curve with a superelevation of .125 per foot located just west of Grimshaw Road (County Road 351) and milepost 24. The superelevation was to begin 100 feet from the curve; when built, the curve was 118 feet from Grimshaw Road and the superelevation of .24 feet, at the outside of the curve greater than the centerline, was to begin at approximately Grimshaw Road. The 1931 plans called for a cross-slope of one-eighth inch higher at the centerline. In new construction, the cross-slope should be a quarter-inch higher at the centerline, to cause faster water drainage off the road. In 1989, the highway was resurfaced, and such resurfacing should have had an equal or better slope; however, due to a lack of funding for the repaving project, the superelevation and proper cross-slope were not included. In 1991, Craig Black, DOT District Engineer, notified Glenn Durrence, DOT Area Engineer, that the curves no longer had superelevations and needed to be corrected, but the work was not done because of a lack of funds. In fact, going around this curve, the road was crowned without a superelevation, so that the water drained to the outside of the curve instead of to the inside; while there was drainage, such drainage was slower than if the proper cross-slope and superelevation were used. Funds to correct the superelevation were not made available in 1991 or prior to the collision, but were made available after the collision. DOT did not maintain the road with the designed superelevation or cross-slope from 1989 until after the July 15, 1992 collision; however, DOT was able to find the funds and do the work within three weeks of the collision.

Plaintiff introduced evidence of prior similar cases of vehicles hydroplaning in the area prior to the collision. The evidence of a number of prior incidents of vehicles hydroplaning at this location prior to July 15, 1992, was testified to by eyewitnesses. Such testimony was similar to the testimony of Stafford regarding the collision, showing that the negligent maintenance was the concurrent proximate cause of the collision.

"Generally, evidence of subsequent repairs following an injury is not admissible on the trial of negligence cases, the usual purpose of such evidence being as a basis for drawing the inference that the defendant thereby impliedly admitted his realization of negligence. [Cits.] *Chastain v. Fuqua Indus.*, 156 Ga. App. 719, 722 (3) (275 SE2d 679) (1980). The reason for excluding such evidence lies in sound public policy that men should be encouraged to improve, or repair, and not be deterred from it by the fear that if they do so their acts will be construed into an admission that they had been wrongdoers. *Ga. Southern &c. [R. Co.] v. Cartledge*, 116 Ga. 164, 168 (1) (42 SE 405) (1902)." (Punctuation omitted.) *Studard v. Dept. of Transp.*, 219 Ga. App. 643, 644-645 (2) (466 SE2d 236) (1995); accord *Evans v. Dept. of Transp.*, 226 Ga. App. 74, 76-77 (3) (485 SE2d 243) (1997); *Ratliff v. CSX Transp.*, 219 Ga. App. 53, 54 (1) (464 SE2d 1) (1995); *Wilson Foods Corp. v. Turner*, 218 Ga. App. 74, 77 (4) (460 SE2d 532) (1995); *Stuckey's Carriage Inn v. Phillips*, 122 Ga. App. 681 (178 SE2d 543) (1970).

The Supreme Court of Georgia recognized that no evidentiary rule is absolute, even the non-admissibility of evidence of subsequent remedial action. In *Brooks v. Cellin Mfg. Co.*, 251 Ga. 395, 397 (306 SE2d 657) (1983), the Supreme Court held: "It is generally presumed that evidence of subsequent repair is submitted by plaintiffs for the purpose of showing that the defendant recognizes and admits his negligence. *Flowers v. Slash Pine Elec. Membership Corp.*, 122 Ga. App. 254 (3) (176 SE2d 542) (1970). If submitted for some other purpose, however, it may be admissible in a particular case. 'Such testimony may, in proper circumstances, be admitted for other purposes . . .' and the jury instructed as to the purpose for which it is received. *Stuckey's Carriage Inn v. Phillips*, [supra]." In *Studard v. Dept. of Transp.*, supra at 645, this Court indicated, that "[a]lthough we have allowed certain exceptions to this rule," it is in the sound discretion of the trial judge in making such determination as to whether to admit or deny evidence of subsequent remedial action as coming within an exception.

The exceptions to the rule include, inter alia, "when the subsequent repair, change, or modification tends to prove some fact of the case on trial (other than belated awareness of negligence, of course), to show contemporary knowledge of the defect, causation, a rebuttal

of a contention that it was impossible for the accident to happen in the manner claimed, and so on. (Cit.) Such evidence may also be admitted where the feasibility of repair or modification is an issue. (Cit.) *Wilson Foods [Corp. v. Turner]*, supra at 77-78 (4)." (Punctuation omitted.) *Royals v. Ga. Peace Officer Standards &c. Council*, 222 Ga. App. 400, 401 (1) (474 SE2d 220) (1996); see also *Brooks v. Cellin Mfg. Co.*, supra at 397; *Doster v. Central of Ga. R. Co.*, 177 Ga. App. 393, 396 (339 SE2d 619) (1985); *Chastain v. Fuqua Indus.*, supra at 722; *Stuckey's Carriage Inn v. Phillips*, supra at 687.

The evidence that, after the collision, the superelevation and proper cross-slope were restored to the pre-1989 condition as called for under the 1931 design plans was relevant and material to show that the absence of such conditions was negligent maintenance and that the restoration was not a change in condition within the evidentiary rule. This case is analogous to *Medi-Clean Svcs. v. Hill*, 144 Ga. App. 389, 393-394 (5) (241 SE2d 290) (1977), in which a safety guard had been removed for repair prior to the injury but restored immediately after the injury. "[T]his was not actually evidence of a change in a condition following an accident. It had been the normal circumstance for the guard to be on the machine prior to the accident." Id. In this case, there was a substantial passage of time between the elimination and restoration of the superelevation and proper cross-slope, but it had been knowingly and consciously done for lack of funding; lack of funds cannot be a defense to improper maintenance, because such defense would deter the proper repairs to eliminate the risk of danger just as surely as the admissibility of subsequent remedial repairs.

"A trial court must apply this exception most judiciously to preserve continued viability of the strong public policy against the introduction of evidence of remedial measures for purposes of proving negligence; nevertheless, due consideration must be given that the remedial action rule was not designed as a shield [to prevent admission of probative evidence as to other issues]. . . . As with the issue of relevancy, the admission of remedial evidence under [any reasonable and probative] exception lies in the sound discretion of the trial court (*Studard [v. Dept. of Transp.]*, supra) and will not be reversed absent manifest abuse. Further, a trial court in its discretion can [admit or] exclude remedial evidence, though otherwise admissible under [any] exception, if its probative value is substantially outweighed by the risk that its admission will unduly prejudice or mislead the jury or confuse the issues being tried. [*Studard v. Dept. of Transp.*, supra at 645]." (Punctuation omitted.) *Royals v. Ga. Peace Officer*, supra at 401-402.

In this case, the trial court, at two pretrial hearings, heard extensive argument as to the admissibility of the subsequent reme-

dial repairs and the exceptions under which the evidence was being proffered. The trial court exercised its sound discretion, not in a suddenly raised evidentiary ruling, but after reasonable reflection, consideration of the proffers of evidence, and citation of applicable law. The trial court did not abuse its discretion in finding such evidence came within an exception to the rule on subsequent remedial measures evidence.

2. The second enumeration of error is that the trial court erred in its charge to the jury regarding subsequent remedial measures. We do not agree.

The general objection to giving any charge on subsequent remedial measures has been addressed in Division 1.

The trial court gave an adequate limiting charge to the jury in their restrictive application of the evidence of subsequent remedial repair: "but that evidence of subsequent repairs is *admissible only to show, if it does show* . . . Evidence of the later or subsequent repairs also was admitted by the Court for the *limited purpose of showing, if it did show. . . .*" (Emphasis supplied.) Such charge adequately limited the jury's use of such evidence for those purposes only.

The DOT's objections made before the trial court after the charge had been given to the jury were as follows: "DOT objects to No. 53 as it deals with the issue of subsequent remedial repairs as according to our motion in limine in this case. That evidence is not admissible. Furthermore, this charge shows that . . . the subsequent remedial measures [evidence] was given for the purpose of showing knowledge of a dangerous condition or it says that's why subsequent remedial measures were allowed.

"DOT employees stated their knowledge as to the conditions of the highway in this case. The subsequent remedial measure would not show the condition of the highway at the time of this accident as the subsequent remedial measure was done after the accident.

"DOT objects to Request No. 55 which is also subsequent remedial measures request. . . . First of all it unduly emphasizes the subsequent remedial measures. Secondly, it was given for the purpose of — to show what the condition was at the time — at the present time and not the condition of the road at the time of Ms. Cannady's accident. The condition of the road at the time after Ms. — the only issue in this case is the condition of the road at the time of Ms. Cannady's accident. The issue — the condition of the road after this accident is not relevant and neither is this charge."

Neither any written request to charge nor the DOT objection before the trial court raised as a ground for the objection that the jury should have been cautioned as to the limited purpose for which the evidence was received, which the trial court in fact did, and that the trial court failed to admonish the jury not to consider the evi-

dence of subsequent remedial measures as either an awareness or admission of negligence, so that the trial court could cure the grounds for objection made. Thus, the objection was defective in that it did not specifically point out the grounds for the objection and failed to state such grounds. *Continental Cas. Co. v. Union Camp Corp.*, 230 Ga. 8 (195 SE2d 417) (1973). To instruct the jury not to consider evidence of subsequent remedial repairs as evidence of admission or awareness of negligence may, in fact, focus the jury's attention on that very issue sought to be avoided. Therefore, the instructions given focused the jury's attention on the only permissible use of such evidence and away from such evidence being considered for an inappropriate purpose; there was no harm.

The DOT has an affirmative duty under OCGA § 5-5-24 (a) to make proper objections that state "distinctly the matter to which [it] objects and the grounds of [its] objection," a standard which requires a high degree of clarity in the objection. *Turner v. Taylor*, 179 Ga. App. 574 (346 SE2d 920) (1986); *Stone v. Burell*, 161 Ga. App. 369 (288 SE2d 636) (1982).

The objection made in the brief was not the objection made at trial; failure to make the specific objection at trial acted as a waiver of such grounds for appellate review. *Henderson v. Glen Oak, Inc.*, 179 Ga. App. 380 (346 SE2d 842) (1986), aff'd, 256 Ga. 619 (351 SE2d 640) (1987); see also *Pierce v. Pierce*, 241 Ga. 96 (243 SE2d 46) (1978); *Jackson v. Meadows*, 157 Ga. App. 569 (278 SE2d 8) (1981); *Wright v. Dilbeck*, 122 Ga. App. 214 (176 SE2d 715) (1970).

Further, the appellate decisions relied upon gave only directory instructions to the trial court that, if the remedial measure is admitted, then proper limiting instructions should also be given when the evidence is admitted; the appellate decisions did not hold that failure of the trial court to so instruct the jury was reversible error. *Wilson Foods Corp. v. Turner*, supra at 78; *Gen. Motors Corp. v. Moseley*, 213 Ga. App. 875, 882 (447 SE2d 302) (1994); *Stuckey's Carriage Inn v. Phillips*, supra at 687. The better practice would be to give limiting instructions at the time of admission of such evidence, as well as the same instructions at the time of the final charge to the jury.

The trial court did not err in its instructions to the jury.

3. The third enumeration of error is that the trial court erred in not giving a proper curative instruction to plaintiff's opening statement that Stafford had settled with her for $100,000. We do not agree.

DOT objected to the plaintiff's telling the jury in the opening statement the amount of the settlement and that they were to subtract such amount from any figure that they arrived at as a verdict. DOT objected, stating: "That is not the law in this State. I know we are not dealing with the evidence, but I object to her telling the jury

something that is not the law of the State."

Now DOT admits in its brief that the trial court had two options to deal with the Stafford settlement: the first option required that the jury be informed of the amount of the settlement and told to subtract such sum from any sum that they determined to award, which option the plaintiff sought to exercise and to which DOT objected; the second option required the court to reduce the verdict prior to judgment by the amount of settlement as a set-off and not to reveal the settlement or the amount to the jury. *Ford Motor Co. v. Lee*, 237 Ga. 554, 555-556 (2) (229 SE2d 379) (1976); *Carney v. JDN Constr. Co.*, 206 Ga. App. 785, 787 (2) (426 SE2d 611) (1992); *King Cotton, Ltd. v. Powers*, 190 Ga. App. 845, 847-849 (2) (380 SE2d 481) (1989); see *Patterson v. Lauderback*, 211 Ga. App. 891, 893 (2), n. 1 (440 SE2d 673) (1994).

By objecting to the lawful option that plaintiff sought to follow, DOT forced the use of the second option after the jury had already been apprised of the settlement and the amount, but no evidence had been introduced, as in *Carney v. JDN Constr. Co.*, supra. This objection is induced error on the part of DOT, if error existed at all. On the insistence of DOT not to use the first option but to use the second option, the trial court gave a curative instruction to the jury to disregard the opening statement of plaintiff's counsel in such regard. DOT did not object to such instruction nor move for a mistrial; DOT, through counsel, stated, "Thank you, your Honor," and remained silent. Overnight, DOT had second thoughts; it moved for mistrial the next day, which was untimely. DOT could have, anytime prior to the jury returning a verdict, requested the trial court to instruct the jury, in light of what the jury had been told in opening statement under option one, that the case with Stafford had been settled for $100,000 and that they should deduct such sum from any award that they made to the plaintiff, which is what plaintiff wanted to do. However, DOT took no such action to protect itself from any remote possibility of prejudice not cured by the trial court's instructions. *Carney v. JDN Constr. Co.*, supra; *King Cotton, Ltd. v. Powers*, supra at 849. Consistent with the DOT's election of option two, the trial court, in the final jury charge, again instructed the jury to disregard any statements made regarding the Stafford settlement, without mentioning the settlement amount. DOT did not object to this instruction, either, and failed to preserve any error for appellate review.

Further, this case did not come within *Carney v. JDN Constr. Co.*, supra, because no evidence was ever introduced regarding the settlement, and the jury was repeatedly instructed to disregard the statement that Stafford's case had been settled for $100,000. The trial court did not err.

4. The fourth enumeration of error is that the trial court erred in

failing to conform its judgment against DOT with the language of OCGA § 50-21-23. We agree.

OCGA § 50-21-23 (a) reads in pertinent part: "The state waives its sovereign immunity for the torts of the state officers and employees while acting within the scope of their official duties . . . and shall be liable for such torts in the same manner as a private individual . . . provided, however, that the state's sovereign immunity is waived subject to all exceptions and limitations set forth in this article." OCGA § 50-21-29 (b) states in pertinent part: "In any action or claim for damages brought under the provisions of this article, no person *shall recover a sum* exceeding $1 million because of loss arising from a single occurrence." (Emphasis supplied.)

In the descriptive caption of Ga. L. 1992, p. 1883, the Georgia Tort Claims Act reads in part: "to provide limitations on the amount and types of damages and interest recoverable." The caption and OCGA § 50-21-29 (b) mandate that a judgment cannot exceed $1,000,000 for one person; what it mandates is that a "person shall not recover a sum exceeding $1 million," in damages. OCGA §§ 50-21-30; 50-21-31. Thus, a judgment cannot be entered that exceeds $1,000,000 in damages, the maximum allowable recovery. OCGA §§ 50-21-29 (b); 50-21-31. Interest is not part of such damage recovery; however, the interest will accrue until the judgment is satisfied by payment of the $1,000,000 in tort damages only upon the maximum recovery or a judgment less than the maximum. OCGA § 50-21-31 reads: "In all cases where judgment is obtained under this article, the judgment shall bear interest from the date judgment is entered at the rate of 7 percent per annum."

The trial court set-off the $100,000 Stafford settlement against the verdict of $2,750,000 and entered judgment for $2,650,000; therefore, interest can run only on the maximum recovery of $1,000,000. The General Assembly provided for post-judgment interest substantially less than the 12 percent for other judgment debtors and barred pre-judgment interest entirely; but to deter the State from delaying the satisfaction of judgments or taking unreasonable time on appeals, interest accrues only on the maximum recoverable judgment until satisfied. See OCGA §§ 7-4-12; 9-12-10; 50-21-30; 50-21-31; *Heath v. L. E. Schwartz & Sons*, 203 Ga. App. 91 (416 SE2d 113) (1992); *Henley v. Mabry*, 125 Ga. App. 293 (187 SE2d 309) (1972).

In *Dept. of Human Resources v. Phillips*, 268 Ga. 316 (486 SE2d 851) (1997), the Supreme Court addressed the retroactive application of the OCGA § 50-21-29 (b) limitation on recovery and the binding effect of the pretrial order applying such recovery limitation. For purposes of this case, the Supreme Court held that "recovery" and judgment were synonymous; the statutory limitation on recovery did mandate the entry of judgment for the limited recovery maximum,

instead of based upon the verdict. "In this appeal from a plaintiffs' verdict in a wrongful death action, we determine that the parties stipulated in the pretrial order that the Georgia Tort Claims Act's cap on damages recoverable against the State was applicable to their action, thereby limiting the damages that could be awarded to no more than $1 million per plaintiff. Thus, the trial court erred by entering judgment awarding the two plaintiffs in this case a total of $3.5 million." Id. The two plaintiffs were the statutory beneficiaries of the decedent and the legal representative, who recovered respectively $2,000,000 for the full value of the decedent's life and $1,500,000 for the decedent's pain and suffering prior to death. All the damages were either directly for or derivative of a single person, coming within the recovery limitation of OCGA § 50-21-29 (b). While the trial court's interpretation of "recovery" and "judgment" as being different so as to avoid the effect of the limitation and permit the interest to accrue on the sum returned in the verdict was persuasive, we are compelled to adhere to the broader prohibition of the Supreme Court.

The trial court erred in entering a judgment in excess of the statutory maximum; the judgment of the trial court is reversed and the case is remanded with instructions to conform its judgment for the plaintiff to the legal allowable amount provided in OCGA § 50-21-29 (b) with interest on such judgment in compliance with OCGA § 50-21-31.

*Judgment reversed and remanded with instructions. Birdsong, P. J., and Ruffin, J., concur.*

DECIDED FEBRUARY 13, 1998

*Thurbert E. Baker, Attorney General, George P. Shingler, Deputy Attorney General, C. Latain Kell, Senior Assistant Attorney General, Eric A. Brewton, Assistant Attorney General, Franklin, Taulbee, Rushing, Bunce & Brogdon, James B. Franklin*, for appellant.

*Edenfield, Cox & Classens, Gerald M. Edenfield, Susan W. Cox, Eschol L. Davis, Jr.*, for appellee.