A99A2180. IN RE VINCENT.
(525 SE2d 409)

JOHNSON, Chief Judge.

Benjamin Vincent received a head injury and permanent brain damage in an automobile accident in June 1991. The Bartow County probate court appointed guardians of his person and property in June 1992. In November 1997, Vincent petitioned to terminate the guardianship. Two months later the probate court granted Vincent's petition. The probate court, however, vacated and set aside its order 11 days later, ruling that it wanted to receive more evidence regarding the need for a guardian. After hearing additional evidence, the probate court denied Vincent's petition and appointed a county guardian. Vincent appealed de novo to the superior court, which held a jury trial. The jury returned a verdict terminating the guardianship of Vincent's person, but continuing the guardianship of Vincent's

property. Vincent appeals from the judgment entered on the jury's verdict. For the reasons that follow, we affirm.

1. Vincent argues that the probate court erred in setting aside its January 15, 1998 order terminating his guardianship because the probate court was divested of jurisdiction after it terminated Vincent's guardianship. The guardian argues that this alleged error was not raised in the superior court and that the superior court made no ruling on this argument. It is well settled that only issues properly raised before the trial court will be considered on appeal.[1] This rule applies in appeals from superior court judgments even when the superior court sits as an appellate court.[2]

Nevertheless, a party may raise the issue of jurisdiction at any time in any court.[3] Thus, we will address the probate court's jurisdiction.

According to Vincent, once the Bartow County probate court terminated Vincent's guardianship, Vincent chose to remain a resident of Polk County, and the probate court of Bartow County lost jurisdiction over him. We disagree.

While the probate court of Bartow County did terminate Vincent's guardianship on January 15, 1998, this did not end its jurisdiction. The probate court retains jurisdiction until the guardians make a proper accounting and letters of dismission are issued.[4] In fact, the January 15, 1998 order required the former guardians to give a proper accounting of Vincent's property. Thus, the probate court of Bartow County still retained jurisdiction when it vacated its January 15, 1998 order on January 26, 1998.

Moreover, a court has the power to revise, correct, revoke, modify or vacate any judgment or order during the term in which the judgment or order is rendered, except those judgments founded upon verdicts.[5] This may be done even on the court's own motion if a meritorious reason exists.[6] Here, the record indicates that soon after the probate court entered its order on January 15, 1998, two of Vincent's neighbors contacted the court because they were concerned about him. Subsequently, within the same term of court, the court vacated its order pending a more thorough evaluation of Vincent. The court was authorized to vacate its original order.

2. The trial court did not err in admitting the testimony of Dr. W. F. Blackerby.

---

[1] *Young v. Scott*, 212 Ga. App. 572, 574 (1) (442 SE2d 768) (1994).
[2] Id.
[3] OCGA §§ 9-11-60 (f); 9-12-16.
[4] See generally OCGA §§ 29-2-84 (a); 29-2-85.
[5] See *Southern Drayage v. Williams*, 216 Ga. App. 721, 722 (2) (455 SE2d 418) (1995).
[6] See *Pekor v. Clark*, 236 Ga. 457, 458 (1) (224 SE2d 30) (1976).

(a) Vincent first argues that the trial court erred under OCGA § 29-5-9 (b) in admitting Dr. Blackerby's testimony. OCGA § 29-5-9 (b) provides, in pertinent part: "In all proceedings under this Code Section . . . the prior adjudication of incapacity shall not be competent evidence in these proceedings." Vincent argues that this Code section does not allow testimony from a doctor who examined and evaluated him in conjunction with an earlier guardianship proceeding. We disagree.

First, we note that this Code section prohibits introduction of the prior adjudication, not medical evidence which was used in the prior proceeding. Second, Dr. Blackerby testified at trial that he reexamined Vincent in January and February 1998 and was basing his conclusions on those examinations, not the examination he performed in 1994. Finally, the record shows that the bulk of the evidence concerning Dr. Blackerby's initial evaluation of Vincent was not elicited on direct examination. Rather, Vincent's attorney questioned Dr. Blackerby extensively regarding his previous findings to show Vincent's improvement since the initial evaluation. Thus, if any party offered or placed into evidence Vincent's prior adjudication of incapacity, it was Vincent. A party cannot complain of error created by his own legal strategy, trial procedure or conduct.[7]

(b) Vincent complains that the trial court erred in admitting Dr. Blackerby's testimony because Vincent's attorneys were not allowed to be present during the evaluation. OCGA § 29-5-9 (c) provides that in a termination of guardianship proceeding, the ward possesses all the rights enumerated in OCGA § 29-5-6. One of these rights is the right to have an attorney present during the evaluation, though the attorney may not participate in the evaluation.[8]

While Vincent correctly asserts that his attorneys should have been permitted in the room during his evaluation, he has failed to show how Dr. Blackerby's failure to allow the attorneys in the room harmed him. The attorneys would not have been able to participate in the evaluation. Vincent's attorneys were given a copy of Dr. Blackerby's evaluation before trial and were permitted to question Vincent and Dr. Blackerby about the evaluation. In fact, Vincent's attorney questioned Dr. Blackerby extensively at trial regarding Vincent's improvement since his initial evaluation.

A party must show harm as well as error to prevail on appeal, and Vincent has failed to meet this burden.[9] The trial court did not err in admitting Dr. Blackerby's testimony.

---

[7] *Sharpe v. Dept. of Transp.*, 270 Ga. 101, 103 (505 SE2d 473) (1998); *Clark v. Stafford*, 239 Ga. App. 69, 72 (2) (522 SE2d 6) (1999).

[8] OCGA § 29-5-6 (c) (3).

[9] See *Davis v. Hawkins*, 238 Ga. App. 749, 752 (3) (521 SE2d 10) (1999).

(c) In his appellate brief, Vincent argues that Dr. Blackerby's testimony should have been excluded because he failed to submit his written report to the court within seven days as required by OCGA § 29-5-6 (c) (5) and because the probate court lacked the authority to appoint a second evaluator. However, these particular objections were not raised at any stage of the proceedings in the superior court. Thus, the superior court never had an opportunity to rule on these matters, and any objections Vincent may have had have been waived.[10]

3. Vincent saw Dr. Neely, a psychiatrist, on March 24, 1997, and July 3, 1997, and spoke with him on the telephone on September 2, 1997. At trial, Dr. Neely testified that Vincent could not manage his estate and financial matters. Vincent argues that Dr. Neely's testimony should have been excluded under the psychiatrist-patient privilege.[11] We find any error in the admission of the testimony harmless.

Communications between a psychiatrist and his patient are to be excluded from evidence on grounds of public policy.[12] The guardian argues that Vincent waived this privilege when he petitioned the court to remove his guardianship and placed his mental status at issue. However, the legislature has clearly expressed its intent that, as a matter of public policy, psychiatrist-patient communications remain privileged even though the patient's care and treatment or the nature and extent of his injuries have been put at issue in a criminal or civil proceeding.[13]

Our first inquiry would normally be whether a psychiatrist-patient relationship existed. It is not clear whether Vincent saw Dr. Neely as a medical doctor (to prescribe medicine to help with symptoms incurred as a result of his head injury) or as a psychiatrist. However, we need not determine whether the requisite confidential psychiatrist-patient relationship had been established because even if such a relationship existed between Vincent and Dr. Neely, any error in the admission of Dr. Neely's testimony was harmless.

The testimony Vincent argues that should have been excluded was Dr. Neely's opinion that Vincent needed a guardian of both his person and his property. Clearly, Dr. Neely's testimony that Vincent needed a guardian of his person was harmless because the jury found that Vincent did not need a guardian of his person. As for Dr. Neely's opinion that Vincent needed a guardian of his property, at least one other doctor who had evaluated Vincent also testified that, in his opinion, Vincent needed a guardian of his property. Because Dr.

---

[10] See *Dept. of Transp. v. Cannady*, 230 Ga. App. 585, 590 (2) (497 SE2d 72) (1998).
[11] OCGA § 24-9-21 (5).
[12] Id.
[13] OCGA § 24-9-40 (a); *Dynin v. Hall*, 207 Ga. App. 337, 339 (4) (428 SE2d 89) (1993).

Neely's testimony was cumulative of other evidence which was properly admitted, a reversal of the judgment is inappropriate.[14]

All other objections to Dr. Neely's testimony were waived because Vincent did not raise them at any time in the superior court.[15]

*Judgment affirmed. McMurray, P. J., and Phipps, J., concur.*

DECIDED NOVEMBER 17, 1999.

*Robert E. Brooks, Jr., Johnny R. Pannell, James O. Hindmon, Jr.,* for appellant.

*Charles Crawford,* for appellee.

---

[14] *Rachals v. State*, 184 Ga. App. 420, 421 (1) (361 SE2d 671) (1987); *Wilson v. Bonner*, 166 Ga. App. 9, 17 (5) (303 SE2d 134) (1983).

[15] *Cannady*, supra.