**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.** **http://www.gaappeals.us/rules/**

**March 19, 2015**

# In the Court of Appeals of Georgia

A14A2038. IN RE LOFTUS a/k/a SEREWICZ.

MCFADDEN, Judge.

Catherine Mary Loftus a/k/a Catherine Mary Serewicz (hereinafter, the ward) currently is the ward of two of her adult children, both of whom serve as her co-guardians and one of whom serves as her conservator. Her brother, Thomas J. Loftus, petitioned the probate court to terminate the guardianship and conservatorship and restore her rights (hereinafter, the restoration petition). The probate court dismissed the restoration petition for lack of probable cause without first conducting a hearing. The record, however, reflects probable cause such that the probate court should have conducted a hearing on the petition pursuant to OCGA §§ 29-4-42 (b) and 29-5-72 (b). Accordingly, we reverse the dismissal of the petition and remand the case for further proceedings.

Georgia law permits "any interested person" to petition to terminate a guardianship or conservatorship and restore the ward's rights. OCGA §§ 29-4-42 (a); 29-5-72 (a). If the petition and its supporting affidavits give rise to probable cause that the guardianship or conservatorship should be terminated, the court shall order an evaluation of the ward. OCGA §§ 29-4-42 (b); 29-5-72 (b). "If, after reviewing the evaluation report, the court finds that there is no probable cause to believe that the [guardianship or conservatorship] should be terminated, the court shall dismiss the petition. If the petition is not dismissed, the court shall schedule a hearing[.]" OCGA § 29-4-42 (b); OCGA § 29-5-72 (b).

The relevant issue in determining the appropriateness of a guardianship or conservatorship for an adult is whether the adult lacks sufficient capacity to make or communicate significant responsible decisions concerning his or her health or safety (in the case of guardianship), OCGA § 29-4-1 (a), or his or her property (in the case of conservatorship). OCGA § 29-5-1 (a). The record in this case contains evidence indicating that the ward now has the necessary capacity to make or communicate these decisions. It contains the notarized statement of the ward's brother, expressing his belief that she was able to "make sound decisions regarding her own welfare." It contains the affidavit of a licensed psychologist stating that he had examined the ward

2

on January 23, 2014, and found her to have sufficient capacity to make or communicate significant responsible decisions concerning her health or safety and concerning the management of her property. In support of this finding, the psychologist cited the ward's coherence, understanding, and awareness during the evaluation and her performance on an assessment test. Among other things, the psychologist noted that the ward "had perfect performance in several areas [of the test] that have to do with overall cognitive ability." He concluded that the ward was not experiencing dementia or delirium and stated that "there is no question that [the ward] is not mentally incompetent and in some areas her performance is remarkably good. She appears to have a good general understanding of verbal and numerical concepts, is aware of her surroundings, and is able to express herself and use humor in social interactions." And the record contains a report from a Ph.D. candidate in clinical psychology who on January 27, 2014, performed a limited evaluation on the ward, during which the ward was alert and oriented, was capable of conversing normally, and displayed "thought processes [that] were logical and coherent."

The record also contains evidence that the ward is not capable of making or communicating such significant responsible decisions, specifically the report of a licensed social worker who had evaluated the ward in connection with guardianship

3

and conservatorship proceedings a year earlier and who, on March 12, 2014, performed a court-ordered evaluation on the ward in connection with the restoration petition. (We disagree with the brother's argument that the social worker should have been precluded from evaluating the ward in the restoration proceedings because she had evaluated the ward in the original guardianship and conservatorship proceedings. See *In re Vincent*, 240 Ga. App. 876, 878 (2) (a) (525 SE2d 409) (1999) (involving testimony in connection with restoration petition from doctor who had evaluated ward in connection with both that petition and prior guardianship petition).

The social worker stated in her report that she found that the ward suffered from dementia, did "not have capacity to make responsible decisions on her own and is also easily influence[d] by others in her decision making." In support of this finding, the social worker cited, among other things, a decline in the ward's cognitive ability from the prior year, the ward's confusion and lack of understanding regarding her finances, her apraxia, her inability to understand instructions, and her poor performance on a different assessment test than that given by the licensed psychologist.

Given that different evaluations of the ward produced such disparate results, we cannot affirm the probate court's ruling there was no probable cause to require a

hearing in this matter. As this court previously has explained, the purpose of a pre-hearing probable cause ruling in a guardianship or conservatorship proceeding, like a summary judgment ruling in a civil case, is "to ferret out meritless claims without the expense and trouble of a trial." *Yetman v. Walsh*, 282 Ga. App. 499, 501 (2) (639 SE2d 491) (2006). This record does not reflect a meritless petition. Rather, it reflects the need for a hearing to assess the professionals' credibility and examine the limitations of their evaluations, so that the probate court can determine which of the very different evaluations to believe. Under these circumstances, it was error for the probate court to dismiss the petition without a hearing.

Accordingly, we reverse the order dismissing the petition and remand the case for further proceedings consistent with this opinion.

*Judgment reversed and case remanded. Andrews, P. J., and Ray, J., concur*.