**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 16, 2020**

# In the Court of Appeals of Georgia

A19A2217. HARVEY et al. v. WILLIAMS.

RICKMAN, Judge.

Oxford Construction Company and Rubin Harvey, Jr. appeal from the final judgment issued after a jury awarded Johnny L. Williams[1] $18 million to compensate him for injuries sustained in a collision between a dump truck driven by Harvey and a tractor driven by Williams and from the trial court's order denying their motion for new trial. Oxford and Harvey contend that Williams's closing argument violated motions in limine granted by the trial court, resulting in prejudice, and that the trial court erred by not intervening to prevent the prejudicial arguments. Oxford and Harvey also challenge the award of prejudgment interest included in the final

---

[1] Williams has proceeded by and through his conservator, Alfonza Lewis, throughout this litigation.

judgment, arguing that the award was not authorized under OCGA § 51-12-14. For reasons that follow, we reverse the damages award and decline to address the prejudgment interest issue.

On April 11, 2013, Williams was driving a tractor for a local pecan farmer when a loaded dump truck driven by Harvey, an employee of Oxford, hit the back of his tractor. Williams was thrown from the tractor and ended up in a ditch on the side of the highway. As a result of the collision, Williams sustained severe injuries, including but not limited to a traumatic brain injury, multiple fractures (including a cracked skull), and the onset of seizures. In addition, while in the hospital for treatment, he developed sepsis. After spending approximately six weeks in the hospital, Williams was transferred to a rehabilitation center for patients with traumatic brain and other injuries where he was evaluated by several specialists and participated in different types of therapy. Williams was discharged to his home after approximately five weeks with the instruction that he would require 24-hour supervision.

At the time of the collision, Williams was 67 years old and was physically active. He enjoyed doing yard work, going to church and singing in the choir, and being around his family and friends. As a result of the traumatic brain injury he

2

sustained in the accident, Williams requires 24-hour care for his day-to-day activities, requires medication to prevent seizures, has dementia, has trouble walking, has trouble emotionally because he gets agitated and confused, and has sexual dysfunction. When he walks, his gait is very slow and unsteady and he has to wear a gait belt because he is at high risk for falling. At the time of trial, Williams was living at home and receiving care from certified nursing assistants 24 hours a day.

A life care plan was prepared for Williams and it included two options – the first option was for him to stay in the home environment and the second option was for him to move to a residential memory care unit. Because the home care option was only available so long as a family member lived with Williams in the home, the life care planner added the memory care unit option in the event a family member was unable to live with him for a temporary or extended period of time. An economics expert calculated the present value of the life care plan, assuming that Williams would live 11.57 years, and valued the home care option at $2,146,805 and the memory care unit option at $773,212. The economist also calculated lost earnings and modest fringe benefits to age 72½ in the amount of $85,524. Williams's medical expenses totaled $1,150,054.15. Thus, with the home care option, the total special

damages would be $3,382,383.15, and with the memory care unit option, the total would be $2,008,790.15.

During opening argument, Williams's counsel informed the jury that they would be seeking approximately $3.4 million in special damages and $20 million for pain and suffering. Counsel for Oxford and Harvey informed the jury during opening argument that they were admitting that Harvey was negligent and that he had caused the accident, and that the only issue to be resolved was the amount of compensation Williams should receive. Defense counsel suggested that fair and reasonable compensation would between $4.1 million and $5.1 million, which would include payment of the claimed medical expenses and lost wages and future care in the amount of $1.5 million, representing the approximate average between the cost of in home care and the cost of the memory care unit, as well as pain and suffering of $1.5 million to $2.5 million. During closing argument, counsel for both parties repeated their suggestions as to the appropriate award for Williams. The jury returned a verdict for $18 million.[2] Following the verdict, the trial court credited Oxford and Harvey with an insurance company payment in the amount of $5,432.103.84 and entered

_____

[2] After the jury rendered its verdict, the trial entered a second phase to address Williams's claim for attorney fees and expenses under OCGA § 13-6-11, but counsel dismissed the claim during opening argument.

judgment in favor of Williams in the amount of $12,567,896.16. The trial court also awarded prejudgment interest in the amount of $1,865,753.42 because Oxford and Harvey failed to accept Williams's pretrial demand of $6 million, which was made in accordance with OCGA § 51-12-14 (a).

Oxford and Harvey filed a motion for new trial in which they argued, inter alia, that Williams's counsel violated several of the court's motion in limine rulings during closing argument, including the ruling prohibiting arguments offered predominantly to overly inflame the emotions of the jury and the ruling prohibiting a violation of the "golden rule." Oxford and Harvey also argued that Williams was not entitled to prejudgment interest pursuant to OCGA § 51-12-14. Following a hearing, the trial court denied the motion for new trial. In its order, the trial court specifically addressed the potential "golden rule" violation and the prejudgment interest issue but only mentioned in general terms the claimed violation of the ruling prohibiting arguments offered predominantly to overly inflame the emotions of the jury.

1. Oxford and Harvey contend that Williams violated the trial court's ruling in limine prohibiting arguments offered "predominantly to overly inflame the emotions of the jury" and the trial court's ruling on their motion in limine precluding a "golden

rule" argument regarding damages, that these violations were prejudicial, and that the trial court erred in failing to intercede and prevent the prejudicial arguments.

(a) Oxford and Harvey filed a motion in limine seeking to exclude statements, contentions, arguments, inferences, or proffer of any evidence to elicit sympathy for [Williams] or any individual. In its Order on Defendant's Motion in Limine, the trial court reserved ruling on this motion, finding it overly broad and vague and instructing that if, during the trial, "the Defendants believe that potential testimony or evidence or offered testimony or evidence is inadmissible, overly prejudicial, and/or irrelevant, the Defendants shall notify this Court, outside the presence of any potential juror, juror, or seated jury." The court then stated, "[n]evertheless, any statements, arguments, or evidence offered predominantly to overly inflame the emotions of the jury or to illicit excessive or undue sympathy, hostility, or prejudice for or against either party is prohibited." Oxford and Harvey contend that counsel for Williams violated this ruling in closing argument.

Williams's counsel argued, "whatever you award Mr. Williams [he] is going to be stuck with for the rest of his life. And I hope that your verdict is not a double-down on sentencing him to a nursing home because if you sentence him to a nursing home, you're signing his death warrant." Counsel continued with, "[l]et's just face

6

it, we hear all the time about what goes on in a nursing home. I do not in good conscience believe that you are desiring to do that to Mr. Williams. None of this is his fault."

This argument, which essentially told the jury that awarding damages based on the cost of nursing home care instead of the more expensive in home care would be sentencing Williams to death, clearly violated the trial court's ruling precluding argument offered predominantly to overly inflame the emotions of the jury.[3] Although Williams argues that the trial court's ruling required Oxford and Harvey to notify the court during the trial of any alleged violations, the court's order limits that requirement to "potential testimony or evidence or offered testimony or evidence" and specifically prohibits argument "offered predominantly to overly inflame the emotions of the jury." And although there was no contemporaneous objection to this argument, the trial court's motion in limine ruling precluded this type of inflammatory argument, and that ruling was sufficient to preserve this issue for appellate review.

---

[3] Further, we cannot conceive of any civil case in which it would be proper for the jury to be told that its action would result in a party's death; such is not even permissible in the first phase of a death penalty trial. See, e.g., *Stinski v. State*, 286 Ga. 839, 852 (48) (691 SE2d 854) (2010) (court's charge properly directed jurors in death penalty case to focus their guilt/innocence phase deliberations solely on the question of defendant's possible guilt rather than possibly being distracted by premature concerns regarding sentencing).

See *Central of Georgia R. Co. v. Swindle*, 260 Ga. 685, 687 (398 SE2d 365) (1990) (despite lack of contemporaneous objection, closing argument held to be improper when motion in limine had been granted on the issue raised on appeal).

In addition to being in violation of the court's ruling, this highly inflammatory argument was not supported by the evidence. See *F.D. Wilson Trucking Co. v. Ferneyhough*, 269 Ga. App. 736, 737 (1) (605 SE2d 132) (2004) ("Flights of oratory and false logic do not call for mistrials or rebuke. It is the introduction of facts not in evidence that requires the application of such remedies.") (citation and punctuation omitted)*; Bell v. State*, 263 Ga. 776, 777 (439 SE2d 480) (1994) (there are limits to the wide range of discussion permitted in closing argument, "the first and foremost of which is the longstanding prohibition against the injection into the argument of extrinsic and prejudicial matters which have no basis in the evidence.") (citation and punctuation omitted); cf. *Seaboard Coast Line R. Co. v. Zeigler*, 120 Ga. App. 276, 278 (1) (a) (170 SE2d 60) (1969) (use of figure of speech was not improper when based on facts established during trial).

The relevant evidence consisted of testimony from a certified nursing assistant who cared for Williams and had previously worked in a nursing home. When asked if Williams would be better off at home with nursing care or in a nursing home, she

testified, "I think he's in a good home and it's kind of better." In addition, the life care planner was asked her opinion about what would be better for Williams and she testified that she understood that the family wanted "him to reside at home as long as that is possible." She also testified that she had identified two facilities with memory care units that "were well known and well thought of" and that if needed, they would provide his care and "[h]e would be safe." The only evidence of any negative impact that a nursing home would have on Williams came from his pastor who testified, "it would crush him to leave his home environment." That opinion is not sufficient to support counsel's argument that sending him to a nursing home would be the equivalent of sentencing him to death.

The violation of the motion in limine alone is not sufficient to establish reversible error; the violation must be harmful. See *CSX Transp. v. Monhollen*, 229 Ga. App. 516, 516 (1) (494 SE2d 202) (1997). In this case, the only issue for the jury was the amount of damages to award Williams and we cannot say that the improper argument about the potential danger to Williams of awarding a lesser amount did not influence the jury's verdict. Accordingly, we reverse the damages award. See *Gen. Motors Corp. v. Moseley*, 213 Ga. App. 875, 878 (1) (447 SE2d 302) (1994), overruled on other grounds, *Webster v. Boyett*, 269 Ga. 191, 196 (2) (496 SE2d 459)

(1998); *Seay v. Urban Med. Hosp., Inc.*, 172 Ga. App. 344, 346 (3) (323 SE2d 190) (1984); see also *John J. Woodside Storage Co. v. Reese*, 105 Ga. App. 602, 604 (6) (125 SE2d 556) (1962) ("remarks of plaintiff's counsel were prejudicial so as to require a new trial").

(b) Oxford and Harvey contend that Williams violated the trial court's ruling granting their motion in limine, which precluded a "golden rule" argument regarding damages. In light of our holding in Division (1) (a), we only address this issue because it is a very close call and the issue may arise on retrial.

The "golden rule" argument urges "jurors to place themselves in the position of plaintiff or to allow such recovery as they would wish if in the same position." *Myrick v. Stephanos*, 220 Ga. App. 520, 522 (4) (472 SE2d 431) (1996). "It is improper because it asks the jurors to consider the case, not objectively as fair and impartial jurors, but rather from the biased, subjective standpoint of a litigant." Id.; see also *Hayes v. State*, 236 Ga. App. 617, 619, n.2 (512 SE2d 294) (1999).

Here, during closing argument, Williams's counsel outlined the following scenario for the jury:

> Let's just say that Quentin Tarantino, I'm sure some of you are familiar with his movies. Anyway, he was the one that made these horrific

movies. So let's just say he put an ad in [a local newspaper] and said I want help in a movie [] that I'm going to make, the person needs to be 67 years old, needs to be married, African-American male to play a role of Johnny Williams in this documentary, details to be provided during the interview, good pay, interviews at Cross Creek Farm, and I need you on a tractor April 11, 2013, at noon. . . . The results of that role is that you'll be dealing with a traumatic brain injury and these problems, I won't read them to you again but these are the problems that are going to be the consequences of your documentary, and we're going to pay you well to do that. How many takers do you think would serve in that role if you promised between 4 and $5 million? That's going to be your situation for the rest of your life to play the role in this Quentin Tarantino documentary. But now you're going to have to deal with that the rest of your life after you get paid. You know, you may find one or two persons maybe who would be willing to play that role. That's exactly what the Defense said that Johnny Williams is entitled to.

There was no contemporaneous objection to this argument, but the trial court granted Oxford and Harvey's motion in limine on this issue and precluded any argument that required or asked any juror to put themselves in the place of one of the parties. The grant of the motion in limine was sufficient to preserve the issue for appellate review. See *Swindle*, 260 Ga. at 687.

The argument in this case comes dangerously close to invoking the "golden rule," but because it is ambiguous, we are reluctant to assume that counsel intended

11

its most damaging meaning. See *McClain v. State*, 267 Ga. 378, 383 (3) (a) (477 SE2d 814) (1996). We do, however, note that the better practice would be to avoid any argument that could be construed as asking jurors to put themselves in the shoes of one of the parties.

(c) Oxford and Harvey also contend that Williams's counsel's reference to the biblical commandment to be "righteous" violated the trial court's pretrial ruling precluding argument offered predominantly to overly inflame the emotions of the jury or to illicit excessive or undue sympathy, hostility, or prejudice for or against either party. Given our holding in Division (1) (a), we do not address this issue.

2. Oxford and Harvey contend that the trial court erred in awarding prejudgment interest under OCGA § 51-12-14 (a).[4] They argue that Williams is not entitled to recover prejudgment interest because the demand letter was a joint letter from Williams and his wife, Mrs. Williams settled prior to trial and never obtained

---

[4] Pursuant to OCGA § 51-12-14 (a), "[w]here a claimant has given written notice by registered or certified mail or statutory overnight delivery to a person against whom claim is made of a demand for an amount of unliquidated damages in a tort action and the person against whom such claim is made fails to pay such amount within 30 days from the mailing or delivering of the notice, the claimant shall be entitled to receive interest on the amount demanded if, upon trial of the case in which the claim is made, the judgment is for an amount not less than the amount demanded."

12

a judgment, and it is therefore impossible determine on what amount prejudgment interest should be awarded. Because we cannot predict the amount of the award that Williams will receive on retrial and whether that award would entitle him to prejudgment interest under this statute, we do not address this issue.

*Judgment reversed. Miller, P. J., and Reese, J., concurring fully and specially.*

# In the Court of Appeals of Georgia

A19A2217.  HARVEY, et al. v. WILLIAMS.

MILLER, Presiding Judge, concurring fully and specially.

It is very unfortunate that the verdict has to be reversed in this case. I agree with the majority, but I am compelled to write separately to express my concerns regarding the conduct of the parties' counsel during trial.

Although trial courts are certainly free to intercede when a party is not abiding by a pretrial ruling,[5] the plaintiff's counsel had a clear duty to abide by the trial court's pretrial rulings prohibiting inflammatory remarks, and the remarks in this case ran afoul of the trial court's rulings. Further, while we may still be able to review the defense's claims regarding the inflammatory remarks, this does not absolve defense counsel of the obligation to object when necessary to protect their clients' interests. Ordinarily, "a party cannot during the trial ignore what he thinks to be error or an injustice, take his chance on a favorable verdict, and complain later." *Keno v. Alside, Inc.*, 148 Ga. App. 549, 551 (3) (251 SE2d 793) (1978).[6] If defense counsel had timely objected, the trial court could have taken the corrective measures needed so as to avoid a retrial at both the taxpayers' and clients' expense. Accordingly, I caution litigators to be more mindful of best practices during trial proceedings.

I am authorized to state that Judge Reese joins me in this special concurrence.

---

[5] See OCGA § 9-10-185 ("Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same.").

[6] As the trial court noted in its order denying the motion for new trial, defense counsel failed to object to the inflammatory remarks and thus "should not now claim error to such."